961 F.2d 469
 60 USLW 2660
 Kent D. FORTSON; Kermit R. Ary, Jr.; Donald G. Bell, Jr.;
Eugene H. Boyle; Steven W. Bryan; A.T. Carroll; Ida Mae
Carroll; E. Mark Deister; John R. Fleck; Larry J.
Gerbens; Michael W. Gibson; Eugenia D. Grizzaffi; Sam H.
Grizzaffi; Randy J. Henderson; Gail S. Henderson; J. Ray
Ivester; Mary E. Ivester; Phyllis K. Johnson; Richard
Kelly; Frank Knight; Geraldine Knight; Howard D. Linders;
W. Christopher Maxwell; Samuel Mizrahi; George E.
Newstedt; Patricia K. Newstedt; William C. Peterson;
Richard G. Powers; Stephen Sadove; Douglas A. Smith;
Larry R. Smith; Nancy K. Strohs; Richard L. Sussman;
George C. Turner; Katherine G. Warwick; William G.
Warwick; Marsie R. Hass; Scott D. Hite; Jack J.
Tumminello, Plaintiffs-Appellants,
v.
WINSTEAD, McGUIRE, SECHREST & MINICK, Defendant-Appellee,
and
Craig Hall; Hall Financial Group; Hall Financial Group,
Incorporated; Hall 85 Associates; Arkansas Associates I,
Limited; Arkansas Associates II, Limited; Hall Real Estate
Corporation; Hall Securities Corporation; Hall Management
Corporation; Hall Western, Incorporated; Larry E. Levey;
Piers L. Chance; Ted P. Wittner; Wittner Properties,
Incorporated; City Centre Limited; Arthur Anderson &
Company; Meritor Savings Bank; Hall City Centre Associates
Limited Partnership, Defendants.
 No. 91-2303.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1992.
Decided April 7, 1992.
 
 John Umana, Umana & Associates, Washington, D.C., argued (Ansley J. Robin, Arlington, Va., on brief), for plaintiffs-appellants.
 David P. Durbin, Washington, D.C., Jordan, Coyne, Savits & Lopata, Washington, D.C., argued (Marianne I. Dunaitis, on brief), for defendants-appellees.
 Before SPROUSE, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case raises a question that often arises where one party to a commercial transaction is accused of fraud: whether legal counsel to the allegedly defrauding party owes a duty of disclosure to the allegedly defrauded party. In this case, a group of investors in a real estate limited partnership brought suit against the law firm retained by the general partners to prepare the tax opinion for an offering memorandum. Plaintiffs alleged that the offering memorandum for the limited partnership failed to disclose certain material facts, and they asserted claims for securities fraud and common law claims for fraud, breach of fiduciary duty, and negligent misrepresentation. The district court granted summary judgment to the law firm on all claims, and plaintiffs appeal.
 
 
 2
 Plaintiffs' claims can survive summary judgment only if the law firm owed them a duty of disclosure. Because plaintiffs have identified no basis in federal or state law for imposing such a duty, we affirm the judgment of the district court.[1]
 
 I.
 
 3
 In 1985, Hall Financial Real Estate Group (HFG) formed the Hall City Centre Limited Partnership (City Centre Partnership) to acquire and operate a commercial office tower in St. Petersburg, Florida. HFG retained the law firm of Winstead, McGuire, Sechrest & Minick (Winstead) to render an opinion concerning certain tax aspects of the City Centre Partnership. In November 1985, HFG commenced an offering of securities in the City Centre Partnership.
 
 
 4
 HFG offered the securities through a Private Placement Memorandum (PPM), in reliance on an exemption from the registration requirements of the federal securities laws. The PPM, which was drafted and approved by in-house counsel to HFG, disclosed the details of the financing of the City Centre development, reviewed the financial status of the general partners, and identified the risks involved in the investment. It also included a tax opinion letter prepared by Winstead.
 
 
 5
 Appellants, 55 of the 117 limited partners, purchased about one-third of the securities. Four years later, the value of the investment had declined, and appellants brought this lawsuit, alleging securities fraud and several common law claims. Appellants sued Craig Hall, the syndicator of the offering; the general partners and other affiliates of Hall (referred to collectively as the Hall defendants); and Winstead. Specifically, appellants alleged that the PPM included material misstatements and omissions, thus misleading appellants as to HFG's true financial condition and as to the projected success of the City Centre Partnership. Appellants sought to recover from Winstead on the ground that the firm breached its duty under federal securities laws and state common law by failing to inquire into and ensure complete and accurate disclosure.
 
 
 6
 Winstead moved for summary judgment on all counts. The thrust of Winstead's motion was that it owed no duty to appellants, and thus could not be held liable for the general partners' failures of disclosure. The district court agreed, and dismissed all claims against Winstead. The court held that uncontroverted evidence established that Winstead's role was limited to providing an opinion to the partnership regarding tax benefits, and did not include confirming the adequacy of the PPM's financial disclosures. In addition, the court ruled that there was no evidence to support a secondary liability claim under the federal securities laws, no evidence of any fraudulent misrepresentations on the part of Winstead that could constitute fraud or negligent misrepresentation, and no evidence that Winstead owed a fiduciary duty to the limited partners.[2]
 
 This appeal followed.[3]
 II.
 
 7
 Appellants do not challenge the accuracy of Winstead's tax opinion. Instead, they challenge the sufficiency of the information provided to them as potential investors and contend that Winstead had a responsibility to ensure full and accurate disclosure. First, appellants complain that Winstead failed to ensure the disclosure of the true financial health of Craig Hall and HFG--that Winstead should have made certain that the PPM or its tax opinion letter disclosed the prior performance of Hall partnerships and certain details about the acquisition financing for City Centre. Further, appellants complain that Winstead failed to reveal the full basis for the PPM's projection of a 95% occupancy rate for City Centre. Finally, appellants contend that Winstead failed to supplement the information conveyed in the PPM with updated financial information as it became available.[4]
 
 
 8
 Because of Winstead's failure to ensure accurate disclosure, appellants claim that the law firm should be liable under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and under state common law for fraud, negligent misrepresentation, and breach of fiduciary duty. Liability requires, however, that appellants establish the existence of a duty of disclosure on the part of the law firm arising out of a fiduciary or other relationship of trust. Under § 10(b), a failure to disclose material information constitutes securities fraud only upon proof of a duty to disclose. Chiarella v. United States, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980). Several circuits, including this one, have concluded that the federal securities laws are not the source of such a duty. Schatz v. Rosenberg, 943 F.2d 485, 490-92 (4th Cir.1991); Abell v. Potomac Ins. Co., 858 F.2d 1104, 1124 (5th Cir.1988), vacated on other grounds, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989); Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 496 (7th Cir.1986). Rather, the duty to disclose material facts arises only where there is some basis outside the securities laws, such as state law, for finding a fiduciary or other confidential relationship. Windon Third Oil & Gas Drilling Partnership v. FDIC, 805 F.2d 342, 347 (10th Cir.1986); Barker, 797 F.2d at 496.
 
 
 9
 Appellants' need to establish a duty of disclosure on the part of Winstead is no less pressing in their state law actions. Texas law (which governs this dispute by the terms of the partnership agreement and the subscription documents) conditions recovery for fraud, negligent misrepresentation, and the like on the existence of a duty. See Hermann Hosp. v. National Standard Ins. Co., 776 S.W.2d 249, 253 (Tex.Civ.App.1989) (duty is essential element of negligent misrepresentation); Moore & Moore Drilling Co. v. White, 345 S.W.2d 550, 555 (Tex.Civ.App.1961) (actual and constructive fraud, if based on failure to disclose, require proof of some duty of disclosure). Under Texas law, that duty must arise out of some fiduciary or other relationship of trust between Winstead and appellants. Marshall v. Quinn-L Equities, Inc., 704 F.Supp. 1384, 1395-96 (N.D.Tex.1988) (reviewing Texas cases requiring fiduciary relationship for claims of negligent misrepresentation, constructive fraud, and breach of fiduciary duty).
 
 
 10
 In this case, a duty to disclose plainly ran from Craig Hall and HFG itself to the limited partners. Whether such a duty ran from the law firm, however, is a different question. Appellants contend that the district court erred in finding that it did not. They would locate such a duty either in Texas common law or in certain regulations governing attorneys who issue tax shelter opinions. We shall address those sources in turn.
 
 A.
 
 11
 The limited partners first argue that Winstead owed them a duty under state common law as the intended third-party beneficiaries of the legal services Winstead provided to HFG. Appellants point out that the PPM identified Winstead as "counsel for the Partnership" and represented that the tax opinion was "for the benefit of the Partnership and the Partners." Appellants also insist that Winstead's role was broader than that of an outside tax firm. Winstead was involved, for example, in drafting a disclosure letter to investors in other HFG partnerships. In appellants' view, Winstead's significant role in HFG's affairs and its knowledge that the limited partners would rely upon the offering documents entitles them to sue under state law as the "foreseeable and intended third-party beneficiaries" of Winstead's tax opinion.
 
 
 12
 We disagree for two reasons. First, we take issue with the limited partners' view of the foreseeability of their own reliance. Actual reliance, of course, would be an element of any underlying fraud or securities claim, but we also think that the foreseeability of a party's reliance is relevant to the existence vel non of an actionable duty toward that party. Winstead surely knew that the limited partners would rely on its tax opinion, but appellants have not challenged the accuracy or completeness of that opinion. Appellants' real complaint is with the adequacy of HFG's financial disclosure. Even if Winstead had knowledge of HFG's financial situation by virtue of its involvement in other partnerships, Winstead cannot have intended or expected that the limited partners would rely on the law firm to secure such disclosure. The evidence before the district court indicated that Winstead was not retained to render securities advice or to ensure compliance with securities laws; HFG had in-house counsel responsible for such matters. Indeed, Winstead clearly informed potential investors in its opinion letter that its role did not extend to matters such as financial disclosure:
 
 
 13
 We have been advised by the accounting firm of Arthur Andersen & Co. that the Financial Projections which are included in the Confidential Memorandum have been prepared using tax and financial assumptions which are consistent with the remainder of the Confidential Memorandum and the Partnership Agreement. We have relied upon Arthur Andersen & Co. and have not been asked to review the Financial Projections. We accordingly express no opinion with regard thereto.
 
 
 14
 Further, Winstead went out of its way to inform investors in the tax opinion letter that it had not "independently verified many of the representations, statements and assumptions" set forth in the PPM. Unless we are to completely nullify the clear language of the tax opinion letter and charge Winstead with a responsibility far greater than that which it was retained to fulfill, we may not hold the law firm liable for the deficiencies in disclosure alleged by appellants.
 
 
 15
 Second, even if the limited partners could establish that Winstead should have foreseen that they would rely on the law firm for disclosure, that would not entitle them to recover under Texas law. While some jurisdictions have recognized a duty of disclosure running to intended third-party beneficiaries, others have imposed such a duty running only to those in privity with the defendant. See Rhode Island Hosp. Trust Nat'l Bank v. Swartz, Bresenoff, Yavner & Jacobs, 455 F.2d 847, 851 (4th Cir.1972). Texas courts have followed the more stringent course, refusing to recognize a third-party beneficiary exception to the requirement of privity. "Texas authorities have consistently held that third parties had no standing to sue attorneys on causes of action arising out of their representation of others." Dickey v. Jansen, 731 S.W.2d 581, 582-83 (Tex.Civ.App.1987). In fact, Texas courts have expressly declined to follow a trend to the contrary in other jurisdictions, and have held fast to the proposition that "an attorney owes no duty to a third party in the absence of privity of contract," even in cases where the attorney renders an opinion he knows will be relied on by a third party. See First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart, P.C., 648 S.W.2d 410, 412-13 (Tex.Civ.App.1983).
 
 B.
 
 16
 Appellants further seek to locate Winstead's duty of disclosure in a Treasury Department regulation and in an American Bar Association ethics opinion. In their view, Winstead's reliance on the representations of its client without independent verification is fundamentally at odds with the guidelines set forth in the Treasury regulations and the ethical standards announced in ABA Opinion 346. Although language can be found in both the Treasury regulation and the ABA opinion to support a variety of positions, we are not convinced that Winstead's conduct is inconsistent with these standards. The ABA opinion permits an attorney to assume that the facts related to him by the client are accurate, so long as he has no knowledge that would raise suspicion. The attorney "does not have the responsibility to 'audit' the affairs of his client or to assume, without reasonable cause, that a client's statement of the facts cannot be relied upon." ABA Comm. on Ethics and Professional Responsibility, "Tax Law Opinions in Tax Shelter Investment Offerings," Formal Op. 346 (1982) [hereinafter ABA Op.]. The Treasury regulations include similar language: "[A] practitioner need not conduct an audit or independent verification of the asserted facts, or assume that a client's statement of the facts cannot be relied upon, unless he/she has reason to believe that any relevant facts asserted to him/her are untrue." 31 C.F.R. § 10.33(a)(1)(ii).
 
 
 17
 More fundamentally, even if Winstead's conduct were somehow inconsistent with the ABA or Treasury standards, we are unwilling to use these standards to establish a legal duty of disclosure. The standards cited by appellants set guidelines for attorneys in their relationships with their clients, but do not purport to create actionable duties in favor of third parties. ABA opinions manifestly do not establish principles of law giving rise to legal causes of action, but by their own terms simply "constitute a body of principles which provide guidance in the application of the lawyer's professional responsibility to specific situations." ABA Op., supra. While the Treasury regulations do, of course, have the force of law, they are not applicable to this situation. Those regulations govern an attorney's "Practice before the Internal Revenue Service" on behalf of a client, 31 C.F.R. § 10.2(a), but do not purport to create any liability on the part of that attorney running to third parties.
 
 
 18
 Both the ABA and Treasury standards were thus "intended by their drafters to regulate the conduct of the profession, not to create actionable duties in favor of third parties." Schatz, 943 F.2d at 492. These sorts of standards clearly "do not create a legal duty of disclosure on lawyers and ... plaintiffs cannot base a securities fraud or other misrepresentation claim on a violation of [such standards]." Id. See also Barker, 797 F.2d at 497 (drawing distinction between ethical standards and actionable duties under securities laws).
 
 III.
 
 19
 In the absence of a duty grounded in law, appellants essentially ask us to create a duty of disclosure grounded in sound public policy. The policy apparently is that of having law firms monitor, upon pain of liability, the representations that their clients make to any third party. The end result would have attorneys stand as the guarantors of integrity in all commercial transactions, whether the context be one of raising capital, marketing a product, or negotiating a contract. Lawyers, in short, would function in the business world as designated watchdogs.
 
 
 20
 Like most policy arguments, however, this one has two sides. Here, Winstead had unequivocally informed potential investors that the law firm had not verified the financial data provided to it by its client. To find a duty in the face of this express disclaimer of verification would render law firms powerless to define the scope of their involvement in commercial transactions. The services that attorneys provide for an issuer of securities have varied widely, and counsel has not been presumed to warrant the veracity of every statement made in an offering memorandum:
 
 
 21
 Although counsel is not doing his job unless he asks searching questions of management--clients seldom come into a lawyer's office in any branch of the law with all the relevant facts neatly arranged on a silver platter--the truthfulness and completeness of a registration statement are in the last analysis management's responsibility.
 
 
 22
 Louis Loss, Fundamentals of Securities Regulation 1056 (2d ed. 1988). The result of appellants' position would thus be a rigid rule charging all attorneys who involve themselves in any narrow corner of a commercial transaction with responsibility for the whole transaction. Under such a regime, "a party could be liable for unlimited information even though it would be well beyond the matter for which it was retained," Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 654 (9th Cir.1988), and even though the information might fall under the protection of the attorney-client privilege. Abell, 858 F.2d at 1124. An omnipresent duty of disclosure would not only be unfair to law firms; it would destroy incentives for clients to be forthcoming with their attorneys and would artificially inflate the cost of involving legal counsel in commercial ventures. See DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir.1990).
 
 
 23
 The balance between the desirability of full disclosure to third parties and the potential damage to the attorney-client relationship is one that must be struck by state law, not by the musings of the federal courts. Here, state law has not imposed any duty of disclosure running from Winstead to the limited partners, and the claims against the law firm must thus be dismissed.[5]
 
 
 24
 The judgment of the district court is hereby
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The cases have used "duty of disclosure" as a term of art that applies to the law firm as well as its client, and we shall continue that usage here. In many situations, the duty of disclosure as it pertains to counsel would require the law firm to obtain more complete disclosure on the part of the client or to disassociate itself from the transaction
 
 
 [2]
 The district court also held that under Texas law appellants could not properly advance derivative claims on behalf of the partnership. Because of our ruling on the absence of a duty, however, we need not address whether any derivative claims have in fact been advanced against Winstead or even could be advanced against Winstead under Texas law
 
 
 [3]
 After the court dismissed the claims against Winstead, appellants' claims against the Hall defendants proceeded to trial. The jury found that there was no securities fraud, but awarded damages against the general partners for breach of fiduciary duty. Prior to the post-trial hearing, however, appellants settled with the Hall defendants
 
 
 [4]
 At oral argument, appellants suggested that Winstead's tax opinion also contained several affirmative misrepresentations. Appellants' conclusory allegations, however, are insufficient to create a genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The district court found that there was no evidence of any affirmative misrepresentations on the part of Winstead, and appellants have not directed our attention to anything that would create an issue of triable fact with respect to the alleged misrepresentations in the tax opinion itself
 
 
 [5]
 Appellants also contend that the district court erred in upholding the general partners' assertion of the attorney-client privilege against the limited partners. Appellants argue that the general partners owed them a fiduciary duty and are thus precluded from asserting the privilege against them. We think the court did not abuse its discretion in ruling as it did, and we affirm
 The issue of whether the attorney-client privilege must yield to the duties owed by the general partners to the limited partners is complex. Winstead would have us impose an inviolable rule of secrecy in order to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Appellants identify a competing policy--that of ensuring full disclosure in a fiduciary relationship--that they claim counsels in favor of abrogating the privilege in this context. We think, however, that the competing policies identified by the parties need not be resolved in an absolute manner in this case. See Garner v. Wolfinbarger, 430 F.2d 1093, 1097 (5th Cir.1970). Rather, we think these competing concerns may be reconciled by entrusting the district court with the discretion to determine whether the limited partners have shown "good cause" for abrogating the attorney-client privilege. Id. at 1103-04.
 We have reviewed the record, and conclude that the district court was certainly entitled to find an absence of "good cause" in this case. Garner suggests a number of factors that courts may consider in making that determination, including the nature of the investors' claim and the probable utility of the investors having the information. Id. at 1104. In light of our holding as to the absence of any duty on the part of Winstead, we think the district court's decision to uphold the attorney-client privilege represents a reasonable accommodation of the competing interests at stake.