Ernest P. **KLINE** and Eugene F. **Knops**

v.

**FIRST WESTERN GOVERNMENT SECURITIES, et al.**

**Civ. A. No. 83–1076.**

United States District Court,
E.D. Pennsylvania.

May 6, 1992.

Joseph D. Mancano, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

Robert E. Leberman, Richard J. Sideman, San Francisco, Cal., for defendant First Western Government Securities, Inc.

First Western Government Securities, Inc., pro se.

Sidney P. Samuels, pro se.

Samuels, Kramer and Co., pro se.

John E. McKeever, Schnader, Harrison, Segal & Lewis, Irving R. Segal, Philadelphia, Pa., for defendant Avery, Hodes, Costello and Burman.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, Senior District Judge.

### INTRODUCTION

Plaintiffs invested in forward contracts through First Western Government Securities (First Western). As part of the promotional materials received from First Western, they received tax opinion letters drafted by Arvey, Hodes, Costello & Bur-

man (Arvey Hodes or Arvey). When they did not receive the favorable tax consequences they expected, plaintiffs brought suit against Arvey Hodes, among others, alleging violations of Rule 10b–5, RICO, and pendent state law claims. Arvey Hodes now moves for summary judgment. For the reasons explained below, the motion will be granted in part, and denied in part.

### FACTUAL BACKGROUND

Between these two parties, few facts are seriously in dispute. The facts outlined in this memorandum, however, are not to be considered as findings of fact with respect to any other parties who may dispute them.

First Western, a business operated by Sidney Samuels, dealt in forward contracts. A forward contract for securities is a contract to purchase or sell securities made on one date, for delivery and payment on a specified later date. (Req. for Admis. 53, attached as Ex. D.[1]) Forward contracts may be entered into in pairs, where a speculator agrees to buy one interest-market-sensitive security on some future date and also agrees to sell a different interest-market-sensitive security on some future date. Differences in the terms of the contracts create a "spread" position that generates economic gain or loss depending on whether market interest rates rise or fall.

Before entering into a set of forward contracts with First Western, each speculator determined how he wished to bias the spread by predicting whether market interest rates would rise or fall. (Req. for Admis. 68 & 72, attached as Ex. D.) First Western and the speculator then entered into one or more sets of forward contracts biased toward that prediction.

If a speculator chose, he could cancel one side of a set of forward contracts, usually the losing side. First Western asked Arvey Hodes for an opinion on the federal income tax consequences of the cancellation of forward contracts. Arvey Hodes issued three opinion letters, dated Septem-

---

1. Arvey's exhibits are designated by letters, plaintiffs' are designated by numbers. Any citation to an exhibit refers to those filed in connection with this motion, unless otherwise indicated.

ber 20, 1978, June 8, 1979, and November 12, 1980. (Ex. A, B, and C.) These letters stated Arvey Hodes's opinion of the tax consequences of the cancellation of forward contracts. The letters clearly stated the factual premises about the First Western trading program on which they relied. Arvey was of the opinion that, based on these facts and then current tax law, the cancellation of a forward contract would result in ordinary loss (or gain). There were disclaimers in the opinion letters, regarding both the underlying facts and the legal conclusions.

Plaintiffs Kline and Knops invested in forward contracts with First Western. They had read the June 1979 and November 1980 tax opinion letters before entering into their forward contracts. (Req. for Admis. 26–28, attached as Ex. D.) Cancellation of the loss side of forward contracts was part of their income tax strategy from the beginning, and they canceled forward contracts that incurred losses. (Req. for Admis. 58, attached as Ex. D.) They took deductions for these losses and the IRS disallowed the deductions. Their dispute with the IRS has now been settled. (Req. for Admis. 88, attached as Ex. D.)

### PROCEDURAL BACKGROUND

On March 3, 1983, plaintiffs Wojdak, Kline, and Knops filed their complaint.[2] On September 20, 1983, plaintiffs moved for certification of a plaintiff class. On July 30, 1984, Arvey Hodes filed its motion for summary judgment. In the meantime, several investors in the First Western program were pursuing litigation with the IRS regarding the deductibility of the losses incurred by the cancellation of forward contracts. The parties agreed that the outcome of that litigation would have a substantial effect on the suit in this court. Consequently, by agreement of all parties, the case was placed in suspense pending final determination of the IRS litigation.

The IRS litigation proceeded to the United States Supreme Court, and was finally resolved on June 27, 1991. The trial judge concluded that "[t]he transactions between First Western and its customers were illusory and fictitious and not bona fide transactions.... Even if the transactions were bona fide transactions, the transactions were entered into primarily, if not solely, for tax-avoidance purposes." Therefore, he held that the investors were liable for additional taxes. *Freytag v. Commissioner of Internal Revenue*, 89 T.C. 849, 875–76 (1987), *aff'd*, 904 F.2d 1011 (5th Cir. 1990), *aff'd*, — U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991).

Upon completion of the IRS litigation, this case was removed from civil suspense. The plaintiffs responded to Arvey Hodes's motion for summary judgment. Arvey Hodes filed a reply, and plaintiffs filed a "sur reply." I have considered all pleadings and exhibits filed with respect to this motion.

Further briefing on the class certification motion has been postponed until after disposition of this summary judgment motion. However, for the purposes of this motion, it is useful to consider the proposed class. Plaintiffs seek to have a class certified of "[a]ll investors purchasing forward contracts in government securities through First Western during the period from January 1978 through the date of the filing of this complaint." (Proposed Order attached to Mot. for Class Certification.)

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment is appropriate only when there is no genuine issue of material fact, and one party is entitled to judgment as a matter of law. *Williams v. West Chester*, 891 F.2d 458, 463–64 (3d Cir.1989). In a motion for summary judgment, the court may examine evidence beyond the pleadings. The court must always consider the evidence, and the inferences from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962);

---

**2.** On June 11, 1987, plaintiff Wojdak was dismissed as a plaintiff in the suit, leaving only Kline and Knops.

*Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## SECTION 10b–5 PRIMARY LIABILITY

In order to establish 10b–5 liability,[3] plaintiffs must prove that Arvey Hodes (1) made a misstatement or omission of material facts; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that the reliance proximately caused plaintiffs' injuries. *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1244 (3d Cir.1989). Defendant Arvey Hodes contends that summary judgment should be granted in its favor because plaintiffs cannot prove any element except (3). Arvey Hodes claims that there were no misrepresentations in its opinion letters, that there was no knowledge or recklessness on its part, and that plaintiffs did not justifiably rely on any misstatements to their detriment.

## I. MISREPRESENTATION

Arvey Hodes contends that there was no misrepresentation in its opinion letters because they correctly stated the risks involved in the cancellation of forward contracts. Plaintiffs respond that it is not Arvey Hodes's *opinion* of the tax consequences which they are challenging, but instead the *factual description* of First Western's trading program which appears in the opinion letters.

### A. Correctly Stated Risks

Arvey Hodes's opinion letters contained explicit disclaimers that while it was Arvey Hodes's opinion that the losses would be deductible as ordinary loss, both the IRS and the courts could take a contrary position. (Ex. A at 6, Ex. B at 6, Ex. C at 3.) The warnings were more explicit. For example, Arvey Hodes stated that "if a court should feel that tax deferral or conversion is the primary purposes [sic] of such transactions, it may be inclined to hold in favor of the Service...." (Ex. C at 16.) Arvey Hodes argues that since it explicitly warned of the risks which actually did manifest, it cannot be held liable.

Plaintiffs argue that

Arvey has completely misconstrued plaintiffs' claim for fraud and misdirects the Court's attention. Plaintiffs do not hold Arvey liable because the law firm misrepresented the tax implications involved in the recognition of gains or losses. These *risks* are not what was misrepresented. Rather the opinions were false and/or misleading and Arvey knew they were false and/or misleading because they were based on misrepresented and omitted facts.

(Pls.' Resp. at 26–27.)[4] Therefore, it is the underlying facts which I must consider.

---

**3.** Rule 10b–5 is found at 17 C.F.R. § 240.10b–5. It provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**4.** Plaintiffs also suggest that Arvey recklessly used the wrong legal standard. While deductibility of losses depends on whether the taxpayer's motive is *primarily* profit generation, Arvey's letters allegedly spoke only in terms of "reasonable expectations of economic gain." Arvey responds that its letters indicated that the transactions must "be for the purpose, and with a reasonable expectation, of economic gain." Arvey believes that it has correctly stated the standard. It is impossible to believe that this distinction, if it is a distinction, made any difference. That is, plaintiffs do not argue that they had "a reasonable expectation" of economic gain, though it was not their "primary motive," and that they were therefore harmed by this alleged misstatement in Arvey's opinion letters.

## B. *Based on Misrepresented Facts*

The facts which plaintiffs allege [5] Arvey misrepresented or omitted are the following:

(1) that delivery of the underlying securities was never contemplated by First Western's trading program;

[Instead, it is alleged that Arvey's opinion letters stated that the forward contracts contemplated delivery of the underlying securities.]

(2) that the prices of First Western's forward contracts were artificially set by First Western with no relation to the real market and that First Western set the prices of its contracts to move in tandem so as to eliminate any risk of economic loss which might be caused by the type of independent price movements which occur on the normal securities market;

[Instead, it is alleged that Arvey's opinion letters stated that the prices of First Western's forward contracts moved independently so as to create a reasonable expectation of economic gain and a risk of loss.]

(3) that First Western's customers' monetary losses would be limited to their initial margin deposits and that customers would not be required to pay additional margins to cover their additional liabilities to First Western;

[Instead, it is alleged that Arvey's opinion letters stated that the customers would be required to pay additional margin deposits to First Western to cover their additional liabilities.]

(4) that First Western charged its customers a set cancellation fee to cancel forward contracts prior to the settlement date and that the cancellation fees were not calculated in relation to First Western's risk or the administration costs incurred in connection with the cancellation;

[Instead, it is alleged that Arvey's opinion letters stated that First Western's cancellation fees were calculated in relation to First Western's risk and the administration costs incurred by First Western in connection with the cancellations.]

(5) that, by design, transactions would be entered into by First Western to obtain a desired tax loss and not with a reasonable expectation of economic gain;

[Instead, it is alleged that Arvey's opinion letters stated that Samuels had represented to Arvey that the transactions would be entered into by First Western with a reasonable expectation of economic gain.]

(6) that beginning at least as early as the Spring of 1980, the IRS had begun large-scale audit activity in connection with First Western's customers; that on October 20, 1980, First Western and affiliated companies were served with numerous IRS summonses for trading records; that First Western was not cooperating in this audit activity; that IRS summons enforcement proceedings were likely; and that the IRS had all but decided to disallow deductions taken in connection with First Western transactions;

[It is alleged that all such references were omitted.]

and (7) that the SEC, the State of Minnesota and possibly other federal investigative agencies were investigating the operations of First Western; and that the IRS was investigating, both criminally and civilly, the operations of Price & Company, a company in which Sidney Samuels was a general partner and a founder and which employed a trading program substantially similar to First Western's.

[It is alleged that all such references were omitted.]

(Pls.' Resp. at 23–25.) Arvey argues both that it did not make the misrepresentations as alleged, and that it had no duty to disclose the facts which it did not disclose.[6]

---

**5.** Plaintiffs' allegations of the underlying misrepresented facts seem to change from pleading to pleading. As Arvey does not seem to take issue with this, I will assume that the statement of the facts from the most recent document, plaintiff's response to the motion for summary judgment, is accepted as controlling.

**6.** Although Arvey views the underlying facts in a somewhat different light, there is no serious

### 1. The "Misrepresentations" were not misrepresented

■ Arvey Hodes argues that it had no knowledge of actual First Western trading practices. This argument will be discussed in more detail at II. *Scienter,* below. Assuming, however, that plaintiffs can prove such knowledge, Arvey Hodes contends that there were no misrepresentations of fact, because every "fact" about First Western's trading program was explicitly labelled as a fact provided by Sidney Samuels.

Each of the opinion letters is addressed to Sidney Samuels himself, and is stated as to be for the exclusive use of Samuels, or First Western. The factual descriptions of First Western's trading programs are prefaced with the following introductory remarks, attributing the descriptions to Samuels: "The following paragraphs contain a summary of such transactions as you have described them to us." (Ex. A at 1); "You have advised us that the facts set forth below constitute an accurate and complete presentation of all relevant information with regard to such transactions." (Ex. B at 1); and "You have advised us that the facts set forth below constitute an accurate and complete presentation of all relevant information with regard to the transactions between First Western and its customers, and that no material fact necessary to make the information herein not false or misleading has been omitted." (Ex. C at 1).

Arvey Hodes's argument is simple. Arvey was never stating as a matter of fact that First Western's trading program had the attributes set out in its opinion letters. Instead, Sidney Samuels had told Arvey that First Western's program had those attributes, and had asked Arvey to provide an opinion letter based on those facts. Arvey was not stating that the program did indeed work under those facts; instead, it was merely stating the premises which had

to be true in order for its opinion to be applicable.[7]

■ Plaintiffs argue that several district court cases support their contention that the mere presence of a disclaimer is an insufficient reason to dismiss a securities fraud claim. Of particular significance for this dispute is *Gilmore v. Berg,* 761 F.Supp. 358 (D.N.J.1991). In *Gilmore,* an attorney had provided a tax opinion letter for a tax shelter, which stated, among other things, that " 'the purchase price of $5.3 million reflects the fair market value of the property as determined by the general partner.' " *Id.* at 370. In reality, the property had been purchased out of bankruptcy for $2.5 million. In determining whether the misrepresentation of the property's value was actionable, the district court stated:

> The court agrees with plaintiffs that a jury could find [the attorney's] statement that "the purchase price of $5.3 million reflects the fair market value of the property as determined by the general partner" is so grossly misleading as to constitute actionable fraud in failing to disclose important facts underlying the determination of fair market value. [The attorney] seeks to exculpate his misleading statement by pointing to the qualifying language, "as determined by the general partner." However, plaintiffs have presented evidence that ... [he] knew that the fair market value of $5.3 million was insupportable.

*Id.* According to *Gilmore,* if Arvey Hodes knew that its statements about First Western were false, the mere fact that these statements were attributed to Samuels will not save it from liability. As the Third Circuit explained in *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.), *cert. denied sub nom, Pelino v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985), an opinion can be actionable if it does not have a sound factual basis. For an opinion to be

contention that these facts, as alleged by plaintiffs, are untrue.

**7.** Arvey's knowledge of Samuels's past involvement in Price & Company does not make Arvey's reliance on the facts which he supplied reckless. "We reject the notion that a corporate

officer's personal background [a felony conviction], without more, makes it improper for the corporation's attorney to rely on his statements about the nature of the corporate client's business." *Stokes v. Lokken,* 644 F.2d 779, 783 n. 3 (8th Cir.1981).

protected, the expert must have a genuine belief in it and a reasonable basis for it. *Id.* at 776. If the opinion is based on underlying materials which suggest that they should not be relied upon without further inquiry, failure to inquire supports the inference that there is no genuine belief in the opinion.[8] *Id.*

Arvey Hodes argues that these cases do not apply to it as it had no relationship with the investors. It argues that *Gilmore* is inapplicable because "—unlike the present case—the law firm ... knew beforehand that its opinion would be a part of or would be distributed with offering materials, thereby establishing an intent that third parties rely on the opinion." (Reply at 15.) Arvey cites to deposition testimony of its attorneys, and disclaimers in the opinion letters, to prove that it never intended for anyone other than Sidney Samuels to rely on its opinion letters. Having no relationship with the investors, no duty to investigate the facts underlying its opinion arose.[9]

■ The existence of Arvey's knowledge of the distribution of its opinion letters is a disputed issue of material fact. Plaintiffs point to evidence which is certainly sufficient to defeat Arvey's motion on this point. First, in a pleading by First Western in this case, First Western stated that "Arvey was aware that the First Western defendants intended to distribute copies of the opinions to prospective investors." (Ex. 7 at 2.) More significantly, plaintiffs point to a letter from the attorney of a prospective First Western investor to attorney Levun, the Arvey Hodes attorney who drafted the opinion letters. This letter states:

> Surely you realize that First Western Government Securities is using your letter in an effort to obtain investors and is furnishing copies of your letter with brochures indicating the mechanical operation of the program.

(Ex. 14 to Levun Dep., attached as Ex. 16.) This letter is dated October 21, 1980, between Arvey's second and third opinion letters. This letter should have been a "red flag" to Arvey. Even if it had been unsure that its previous opinion letters were being distributed, it knew that its third letter certainly would be.[10]

Because there is a dispute over a material fact (Arvey's knowledge that its opinion letters were being disclosed) with respect to the issue of misrepresentations, summary judgment cannot be granted on this element of the 10b–5 claim.

### 2. *No duty to disclose*

■ Plaintiffs also allege that Arvey's failure to make mention of significant IRS and SEC investigations of First Western and Price & Company is actionable.

Several circuits have taken the view that there is no liability for attorney omissions about clients absent a duty to disclose. *E.g., Fortson v. Winstead, McGuire, Sechrest & Minick,* 961 F.2d 469 (4th Cir. 1992); *Schatz v. Rosenberg,* 943 F.2d 485, 490 (4th Cir.1991), *cert denied sub nom, Schatz v. Weinberg,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). Such a duty arises when the plaintiff is a client of the attorney, or if there exists a "fiduciary

---

**8.** In *Herskowitz v. Nutri/System, Inc.,* 857 F.2d 179 (3d Cir.1988), *cert denied,* 489 U.S. 1054, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989), the Third Circuit held that the *Eisenberg* test is an objective one, even though the "without genuine belief" language suggests a subjective test. *Id.* at 185. Given that, the inference to be drawn from an opinion based on objectively unreliable information is that the expert was "adopt[ing] an assumption which the factfinder concludes was objectively unreasonable in the circumstances." *Id.*

**9.** This position is intuitively logical. If X provides an opinion letter solely for the benefit of Y, based on facts provided by Y, X has no duty to investigate whether those facts really are true. However, the situation changes when X gives the opinion to Y with the intent or knowledge that third-parties will rely on it. If X does not reasonably believe in the facts underlying its opinion, it can be liable to the third-party for making the opinion without further investigation.

**10.** There is no evidence as to what action, if any, Arvey took in response to this letter. For example, there is no evidence as to whether Arvey phoned Samuels and ordered him to stop distributing the opinion letters. The letter to Levun simply raises the factual dispute; it does not conclusively resolve it in plaintiffs' favor.

or other confidential relationship with the third party." *Id.* Even an ethical duty to withdraw from the representation or to disclose the information will not create a legal duty to disclose enforceable with civil liability. *Id.* at 492. Public policy arguments support limiting attorney liability for omissions, in order to protect the confidentiality of attorney-client communications. *Id.* at 493.

■ While there is liability for *misrepresentations* when the attorney knows that its letters are going to be communicated in connection with a sale of securities, to prove liability for an *omission*, a plaintiff must show a fiduciary relationship with the attorney. Absent such a relationship, there is no duty for the attorney to reveal facts about the client which were learned either from client communications or in the course of a representation.

Plaintiffs do not suggest that "a fiduciary or other similar relation of trust and confidence" existed between them and Arvey Hodes. Further, they admit that First Western was Arvey's client, and that they were not. Instead, plaintiffs attempt to avoid application of the rule of non-disclosure by stating that "Arvey did not have mere knowledge of the existence of investigative activity, but *represented* First Western in connection with several official investigations." (Sur Reply at 4.) This fact in no way tends to show the character of any relationship between plaintiffs and Arvey Hodes, which is the relevant question. Instead, it shows the source of Arvey's knowledge of the information, a representation of its client subject to the duty of confidentiality. This fact does not create a duty to disclose.[11]

Because plaintiffs have not offered any evidence suggesting that Arvey Hodes had a duty to disclose the facts about the investigations, summary judgment will be granted on this count. Plaintiffs cannot proceed on the issue of 10b-5 liability for Arvey's omissions.

## II. SCIENTER

■ Since the Supreme Court's holding in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), that there is no 10b-5 liability for mere negligence, the Third Circuit has held that recklessness is sufficient for liability. Recklessness has been defined as highly unreasonable conduct which presents a danger of misleading buyers that is either known to the defendant or is so evident that the actor must have been aware of it. *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 193 (3d Cir.1981).

Arvey Hodes argues that plaintiffs cannot show that it acted with the requisite scienter, either knowingly or recklessly. Plaintiffs respond that there is evidence which suggests that Arvey knew, or should have known, of the actual facts underlying First Western's trading plan, thus creating a disputed issue of fact.

First, it should be noted that "a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind and assessing credibility is a delicate matter best left to the fact finder." *Metzger v. Osbeck,* 841 F.2d 518, 521 (3d Cir.1988) (quoting *Watts v. University of Del.,* 622 F.2d 47, 52 (3d Cir.1980)). Therefore, if plaintiffs have any evidence which tends to show Arvey's scienter, summary judgment should be denied and the issue left to the jury.

Plaintiffs cite to the deposition of Durward Gehring, an Arvey Hodes attorney, for the proposition that Arvey Hodes was involved in the drafting of First Western's documents, and therefore knew the truth about First Western's program. The relevant part of the questioning includes:

Q: Did the firm during the period that you worked on the First Western account assist Mr. Samuels in drafting some of the documents used in the First Western program?

---

11. Nor is this fact relevant under the alternative "flexible duty" test for determining a duty to

disclose. *Gilmore v. Berg,* 761 F.Supp. 358, 368 n. 6 (D.N.J.1991) (Finding no duty to disclose).

A: Yes.

(Ex. 21 at 38.) Further, they cite to the trial testimony of Sidney Samuels in the IRS litigation, *Freytag*. Mr. Samuels testified on direct examination that "[l]ong before we started we sat down with our counsel [Arvey Hodes], who were experts in this area, and went through what types of forms are needed, how they should be structured. All the forms that you'll see ... were designed by them." (Ex. 22 at 469.)

This testimony raises the issue of whether Arvey Hodes designed the documents used in First Western's trading program. If it can be shown at trial that Arvey Hodes did design the documents, a reasonable fact finder can infer that Arvey knew the actual facts about how First Western conducted its trades. If Arvey did know these facts, it had the requisite scienter, and its misrepresentations about the facts governing the First Western program would be actionable. Summary judgment will therefore be denied on this issue.

## III. RELIANCE

To recover for misrepresentations under 10b–5, plaintiffs must show that they relied upon the misrepresentations. Arvey Hodes argues that plaintiffs' reliance was not reasonable, and that they therefore cannot recover.

▆ In determining if the plaintiffs acted reasonably in relying on a misrepresentation of fact, several factors are considered: (1) the presence of a fiduciary relationship between plaintiffs and defendant; (2) plaintiffs' opportunity to detect the fraud; (3) sophistication of the plaintiff; (4) the presence of a long standing business or personal relationship between plaintiffs and defendant; and (5) the plaintiffs' access to the relevant information.

The burden is on the defendant to prove that plaintiffs' reliance was not reasonable. *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir.1976).

▆ Here, it appears that Arvey cannot meet its burden. As for the first and fourth factors, Arvey Hodes had no special relationship with the plaintiffs which would give the latter any reason to especially trust their representations.[12] However, all of the other factors weigh against Arvey. Arvey has not shown that plaintiffs had any access to the factual information which would have enabled them to determine First Western's true trading patterns. Nor is there any evidence that the plaintiffs had any particular sophistication in these transactions such that they should have noticed any irregularities in First Western's program.[13] Given this, Arvey has not shown that plaintiffs' reliance on the misrepresentations about the First Western trading program was unreasonable.

There is, however, one misrepresentation which requires special consideration.

### A. *Entered to Generate Tax Loss*

▆ Plaintiffs allege that Arvey misrepresented the fact "that, by design, transactions would be entered into by First Western to obtain a desired tax loss and not with a reasonable expectation of economic gain." (Pls.' Resp. at 24.) Indeed, in each opinion letter, Arvey states that its opinion is contingent on the exact opposite occurring. The second and third opinion letters, on which plaintiffs relied, contain the following language:

[T]his opinion ... is ... expressly conditioned on your representation that such transactions will be consummated by the customers of First Western with a reasonable expectation of economic gain.

---

12. Nor can plaintiffs predicate their claim on their reliance on Arvey's reputation in the tax field. *Hayden v. Feldman*, 753 F.Supp. 116, 120 (S.D.N.Y.1990). (Plaintiffs cannot recover when they relied on defendants' reputations rather than seeking further information.)

13. To the extent that the proposed plaintiff class must be considered, the tax court held that "[i]n cases where 'finders' were involved, at least as far as the test cases reveal, the customer had little or no understanding of the program." *Freytag*, 89 T.C. at 861.

(Ex. B at 6, Ex. C at 3.) [14]

This statement in the opinion letters is a factual statement regarding the behavior of First Western's *customers*, not First Western itself. If it is a "misrepresentation," it is so not because First Western conducted its transactions differently, but because the customers themselves had a state of mind different than that contemplated by Arvey Hodes in its opinion letters.[15] Thus, this statement is not one for which Arvey can be held liable for misrepresentation. Instead, it is one which Arvey can use as a defense. For if the plaintiffs entered into the transactions *without* a reasonable expectation of economic gain, they could not reasonably rely on Arvey's opinions, as they were explicitly told that the opinions did not apply to them.[16]

The question of whether plaintiffs entered into the transactions with a reasonable expectation of economic gain is therefore critical. If there was no such expectation, there can be no 10b–5 liability for the opinion letters.

◼ There is a significant quantity of evidence which tends to show that plaintiffs did not have a reasonable expectation of economic gain. In fact, the ten test-case petitioners in Tax Court were found to have had no more "than a most fleeting interest in a potential economic gain.... [T]his program was driven almost exclusively, and certainly primarily, by tax con-

siderations." *Freytag*, 89 T.C. at 886. This holding is conclusive as to those ten petitioners under the principles of res judicata. Therefore, if a plaintiff class is to be certified, these ten individuals cannot be a part of it.

Other facts also tend to indicate that, in the words of the Tax Court, "the tax tail wagged an economic dog." *Id.* at 878. For example, in the *Freytag* litigation, the government's expert, Professor Jones, described the First Western program in the following language:

> Customers provided First Western with tax preferences and interest rate forecasts. Customers also gave First Western an initial cash margin deposit. First Western budgeted part of this deposit as fees to itself. The budgeted fees were proportional to the desired tax preference.

(Jones's Report at 2, attached as Ex. 24.) An IRS agent report states that "[t]he taxpayer still maintains these transactions were entered into with a profit motive. However, the substance of the transactions firmly indicate that the only motive is tax avoidance." (IRS Agent's Report at 17, attached as Ex. 32.) Attached to this report is a form, presumably used by First Western, on which a customer's "Tax Data" is recorded. Included on this form are spaces for "Requested Tax Results" and "Requested Future [Tax] Results," in specified amounts. This evidence suggests

---

**14.** The first opinion letter, on which plaintiffs did not rely, contained similar language. (Ex. A at 6.)

**15.** Qualifying this factual statement by the phrase that it is Samuels's representation does not prevent it from being a factual statement. Plaintiffs cannot have it both ways. They cannot say that Arvey's attribution (to Samuels) of the factual statements about First Western does not shield it from liability, but that Arvey's attribution of factual statements about the customers shields plaintiffs from the requirement of reasonable reliance.

**16.** Perhaps plaintiffs will argue that even if they could not rely on the opinions themselves, they could still reasonably rely on the factual description of First Western's program contained in the opinion letters. That is, that they could rely on the statements about the program which indicated that the transactions were not sham transactions but instead had economic sub-

stance. This, however, raises the issue of causation. For if plaintiffs entered into the transactions *without* a reasonable expectation of economic gain, any losses which they suffered in the transactions themselves are obviously not compensable, as they were intended. Moreover, the tax losses would not be recoverable either. The Tax Court rested its holding of liability on two alternative grounds, that the transactions were shams *and* that they were entered into without any interest in economic gain. *Freytag*, 89 T.C. at 875–76. Given this, if plaintiffs relied on Arvey's statements that the transactions were not shams, but they had no reasonable expectation of economic gain, the tax losses would have been incurred regardless of the misrepresentations about the transactions. Since reliance on the misrepresentations would not be responsible for the tax losses incurred, recovery would be precluded.

that the plaintiffs, customers of First Western, had no interest in an economic gain, and instead sought only tax benefits.

If plaintiffs cannot refute this and other evidence, they cannot recover. If it is proven at trial that plaintiffs entered into transactions with First Western as part of an illegal scheme to shelter income, they cannot recover against the very attorneys whose opinion letters stated that the favorable tax results would not occur unless plaintiffs had a profit motive.

## RULE 10b–5 AIDER AND ABETTOR LIABILITY

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court refused to determine if, and under what circumstances, there can be aider and abettor liability under Rule 10b–5. In the absence of guidance from the Supreme Court, the circuit courts have developed their own test for aider and abettor liability.

■ To prove aider and abettor liability for a securities violation, a three-part test has been established. Plaintiffs must prove that: (1) there is an underlying securities violation (sometimes called the "wrongful act"); (2) the aider and abettor had knowledge of the securities violation; and (3) the aider and abettor *knowingly* and *substantially* participated in the wrongdoing. *Monsen v. Consolidated Dressed Beef, Co.*, 579 F.2d 793, 799 (3d Cir.1978), *cert. denied sub nom, First Pa. Bank v. Monsen*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). *See also Schatz v. Rosenberg*, 943 F.2d 485, 495 (4th Cir.1991); *Stokes v. Lokken*, 644 F.2d 779, 782–83 (8th Cir.1981).

## I. PRINCIPAL VIOLATION

There is no contention that there is no underlying securities violation. For the purposes of this motion only, it will be assumed that First Western engaged in securities fraud in violation of Rule 10b–5.

## II. KNOWLEDGE

■ As discussed above, plaintiffs have pointed to evidence which tends to show that Arvey Hodes had a hand in drafting the documents used in First Western's trading program. If this is true, and Arvey Hodes knew the truth about the First Western program, the second element of aider and abettor liability is satisfied. If Arvey knew how the First Western program was truly being run, it knew that First Western was running sham transactions, and was therefore violating the securities laws. Arvey cannot, therefore, receive summary judgment on this issue.

## III. SUBSTANTIAL ASSISTANCE

■ Arvey is alleged to have substantially assisted First Western's fraud by issuing the opinion letters with their alleged misrepresentations and omissions of relevant facts. As the allegations regarding misrepresentations are sufficient to state a claim for primary liability under 10b–5, they are certainly sufficient to support a claim for aider and abettor liability, if knowingly made.

The omissions standing alone, however, do not support a cause of action for aider and abettor liability. As is the case with primary liability, there is no liability for a failure to disclose unless there is a duty to disclose. "Absent a duty to disclose, allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim." *Schatz*, 943 F.2d at 496. Plaintiffs cannot show that a fiduciary or other relationship existed with Arvey Hodes which imposed on the latter a duty to disclose client confidences.

■ Moreover, in the absence of knowing misrepresentations, plaintiffs cannot prove that Arvey Hodes acted with knowledge of First Western's fraud. If the only "assistance" rendered was a failure to disclose IRS and SEC investigations of First Western and Price & Company, knowledge of the underlying fraud cannot be inferred. *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1127–28 (5th Cir.1988), *vacated on other grounds sub nom, Fryar v. Abell*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989)

(At most, defendant's knowledge of SEC, FBI and other investigations of its client create "aroused suspicions." Aroused suspicions alone do not satisfy the knowledge requirement of aider and abettor liability.)

Therefore, while the motion for summary judgment will be denied on this count, plaintiffs cannot attempt to prove that Arvey had sufficient knowledge of First Western's fraud by means of Arvey's knowledge of governmental investigations into First Western and Price & Company.

### SECTION 6 LIABILITY

Plaintiffs' complaint attempts to state a claim under section 6 of the Commodity Exchange Act. Plaintiffs now concede that the Commodity Exchange Act is not applicable to this case. (Pls.' Resp. at 2 n. 3.) As they claim that they "are no longer pursuing any claims under the Commodity Exchange Act," summary judgment on that claim will be granted.

### PENDENT STATE LAW CLAIM—NEGLIGENT MISREPRESENTATION

The parties agree that in Pennsylvania, the tort of negligent misrepresentation is governed by the Restatement (Second) of Torts § 552. This section provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3) [governing those under a public duty to disclose information], the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

It is important to recognize that this tort sounds in negligence, not fraud. Therefore, not only is an absence of justifiable reliance a defense, contributory or comparative negligence may also provide a defense.

■ Arvey Hodes suggests that its disclaimers provide a complete defense to the tort of negligent misrepresentation. First, it claims that the warnings that the opinion letters are not to be relied on by anyone other than First Western employees prove that plaintiffs were not members of the class for which the opinions were intended, and therefore cannot recover.

However, there is a disputed issue of material fact as to whether Arvey knew, at least before the third opinion letter, that Samuels was giving the opinion letters to the class of prospective customers. Plaintiffs can recover if they are members of a class "for whose benefit and guidance [defendant] knows that the recipient intends to supply [the information]." Thus, plaintiffs have raised a dispute as to whether they are within the group of potential plaintiffs who can recover.

■ Arvey's second disclaimer regards the facts about First Western's trading program. Specifically, Arvey's opinion letters stated that the factual descriptions of First Western's trading program were supplied by Samuels. Therefore, it is suggested that Arvey made no representation that the description of the trading programs was correct.

Illustration 3 to section 552 of the Restatement is helpful. In the illustration, an accounting firm prepares financial statements from a corporation's books without performing any tests of the accuracy of the entries themselves. The accounting firm clearly labels the statements "unaudited" and provides a written representation that it is not in a position to express an opinion upon them. When it turns out that the

books, and consequently the financial statements, were in error, the intended recipient of the financial statements brings suit against the accounting firm. The firm is held not liable.

This illustration differs from the alleged facts in our case in one important respect. It is stated that "[n]othing comes to the attention of [the accounting firm] in the course of preparing the statements to indicate that they were incorrect." It is alleged, however, that Arvey Hodes had information which did suggest that the facts given by Samuels were incorrect, if they did not have actual knowledge of the inaccuracies. Arvey's alleged involvement in the preparation and review of First Western's documents could give rise to the inference that Arvey knew the truth about First Western's program. If not, it could give rise to the lesser inference that a reasonable firm in Arvey's position would have noticed that something was amiss and would have investigated further. Arvey's disclaimer does not, therefore, provide a defense to negligent misrepresentation.[17]

The motion for summary judgment will be denied on this count.

### RICO

In plaintiffs' complaint, they allege a cause of action under 18 U.S.C. § 1964(c), the civil RICO statute. This statute allows plaintiffs to recover treble damages and attorney fees upon proof that they were injured in their "business or property by reason of a violation of section 1962." Section 1962 has four subsections, only two of which are arguably applicable.[18] Subsection (c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activi-

ty...." Subsection (d) prohibits conspiring to violate, among other things, subsection (c). A "pattern of racketeering activity" requires at least two acts of racketeering activity. Mail fraud, wire fraud and securities fraud are all acts of racketeering activity. 18 U.S.C. § 1961.

Arvey Hodes claims that summary judgment must be granted in its favor on the grounds that Arvey lacks the scienter for RICO liability, Arvey is not an aider and abettor of a RICO violation, and plaintiffs have not alleged a racketeering injury.

■■■ Plaintiffs claim that the RICO enterprise was First Western. It is undisputed that Arvey was First Western's general counsel. Therefore, Arvey was "employed by or associated with" First Western. Nor is it disputed that First Western was engaged in interstate commerce, satisfying that requirement of the statute.

■■■ Plaintiffs allege that the same acts which form the basis of 10b–5 liability support RICO liability in this case. Arvey argues that a higher level of scienter is necessary for RICO liability. This is simply not the case. Sufficient evidence from which a jury could find scienter for securities fraud can also establish scienter for predicate acts of securities fraud under RICO. *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1249 (3d Cir.1989). Notwithstanding Arvey's argument to the contrary, acts of mail fraud can be premised upon reckless disregard for the truth. There is no need to prove a specific intent to defraud. *Id.* Therefore, as there is a material issue of fact with respect to Arvey's scienter for securities fraud, the same material issue exists with respect to RICO and summary judgment cannot be granted on this claim.

Arvey all but admits that its argument regarding aiding and abetting RICO rises and falls with its aiding and abetting argu-

---

**17.** Plaintiffs allege that Arvey "knew or should have known" the facts to be false. (Complaint at ¶ 54(b).) If plaintiffs are attempting to allege a knowing misrepresentation, or one committed in bad faith, they would have to allege a state law claim of fraud, not negligent misrepresentation.

**18.** Plaintiffs waive any claims they may have made under subsections (a) and (b) of 18 U.S.C. § 1962. (Pls.' Resp. at 59 n. 18.) As a result, summary judgment will be granted as to these claims.

ment regarding securities fraud. (Reply at 41.) Since summary judgment was denied on the securities fraud claim, it will be denied here.

 Finally, Arvey argues that plaintiffs were not injured by any of its actions. Presumably Arvey is arguing that plaintiffs did not reasonably rely on the opinion letters in deciding to purchase the forward contracts. Again, the same discussion applicable to securities fraud is applicable here. If plaintiffs entered into the forward contracts without a reasonable expectation of economic gain, then their (tax) losses were suffered for that reason, not as a result of any racketeering activity in which Arvey Hodes is alleged to have engaged. Clearly the ten members of the proposed class who were parties in the test cases in the tax court litigation would be precluded from proceeding on the RICO claim. The motion for summary judgment will be denied on this claim; but at trial, in order to recover, plaintiffs must distinguish themselves from the investors in First Western who did not have a reasonable expectation of economic gain.

## CERTIFICATION FOR IMMEDIATE APPEAL

 A district judge "shall ... state in writing" when he is "of the opinion that [an] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In this case, both elements of the statute are met.

There are two "controlling issues of law as to which there is a substantial ground for difference of opinion." First, this case raises the issue of the potential liability of an attorney for alleged misrepresentations of fact in an opinion letter, when those factual statements have been specifically attributed to another individual. There does not appear to be any appellate court ruling, from any circuit, on this issue. While I believe that the district court in *Gilmore* was correct in holding that if the attorney is aware of the falsity of the

statements, he may be held liable, there is a substantial ground for difference of opinion. For example, it may be that, as a matter of law, a plaintiff would be unreasonable in relying on such a statement of fact, when it is clearly attributed to someone else.

Second, this case raises the issue of the liability of an attorney for omissions of fact in an opinion letter. Several circuit courts have ruled on this issue and found that there is no liability absent a duty to disclose. Some district courts, however, have found that there is liability when an attorney knows his opinion letter is going to be sent to third parties. Other courts have applied the "flexible duty" test. A Third Circuit opinion clarifying the test to be used in this circuit would resolve this dispute.

Additionally, an immediate appeal "may materially advance the ultimate termination of the litigation." There is a motion for class certification pending and other defendants are still involved in this litigation. If it is the case that summary judgment should have been granted in favor of Arvey Hodes, many factual disputes will not need to be tried. Additionally, there is evidence which suggests that Arvey Hodes is the only defendant with sufficient resources against which plaintiffs could proceed. If the Third Circuit permits this appeal and decides in Arvey's favor, it is possible that the entire trial of this matter will be avoided.

Arvey filed its motion in 1983. It has been almost nine years since it originally sought a judicial determination of its freedom from liability. Because there is substantial ground for a difference of opinion, it would be unjust to force it to wait any longer for a final ruling on its motion.

## CONCLUSION

As discussed above, Arvey Hodes's motion for summary judgment will be denied on most counts. It will be granted with respect to the claims under the Commodity Exchange Act and RICO claims based on subsections (a) and (b) of 18 U.S.C. § 1962. Summary judgment will also be granted to

the extent that plaintiffs' claims are based on omissions of fact, as distinguished from misrepresentations. Moreover, as a matter of law, judgment will be entered for Arvey Hodes on all counts if it is shown at trial that plaintiffs did not enter into the forward contracts with a reasonable expectation of economic gain. This opinion will be certified for immediate appeal.

## ORDER

For the reasons stated in the attached memorandum opinion, it is hereby ORDERED that defendant Arvey, Hodes, Costello & Burman's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Judgment is entered in favor of defendant Arvey, Hodes, Costello & Burman, and against plaintiffs, on Count II of plaintiffs' complaint (alleging violations of the Commodity Exchange Act); and on Count VIII of plaintiff's complaint, to the extent it relies on subsections (a) and (b) of 18 U.S.C. § 1962. Additionally, judgment is entered in favor of defendant Arvey, Hodes, Costello & Burman, and against plaintiffs, on all counts of plaintiffs' complaint to the extent that they rely upon omissions of fact. Plaintiffs may proceed on those counts to the extent that they rely upon misrepresentations of fact.

It is further ORDERED that, pursuant to 28 U.S.C. § 1292(b), this order involves controlling questions of law as to which there is substantial ground for difference of opinion, an immediate appeal from this order may materially advance the ultimate termination of this litigation, and it is therefore certified for immediate appeal.