**F.E. APPLING INTERESTS, Individually and on Behalf of Boca Chica Development Co., Appellant,**

v.

**McCAMISH, MARTIN, BROWN & LOEFFLER, Appellee.**

No. 06–96–00084–CV.

Court of Appeals of Texas, Texarkana.

Argued July 24, 1997.

Decided Aug. 12, 1997.

Rehearing Overruled Sept. 3, 1997.

Arnold Anderson Vickery, Archer Waldner & Vickery, Houston, David M. Gunn, Scott Rothenberg, Rothenberg & Gunn, Bellaire, William B. Emmons, Emmons & Associates, Houston, for Appellant.

H.L. Buddy Socks, McCamish, Socks, Kolb, San Antonio, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

F.E. Appling Interests, individually and on behalf of Boca Chica Development Company, appeals a judgment in favor of the defendant-appellee, McCamish, Martin, Brown & Loeffler. The appellant contends that the trial court erroneously granted summary judgment against its negligence claim. The judgment is reversed and the case remanded.

F.E. Appling Interests, a Texas general partnership, was the managing partner of Boca Chica Development Company ("Boca Chica"), a Texas joint venture. Floyd E. Appling, Jr., a co-trustee and income beneficiary of two of the four Appling family trusts comprising the appellant, executed an affidavit describing many of the facts leading to this case. According to Appling's affidavit, Boca Chica obtained a loan and line of credit from Victoria Savings Association ("VSA") in 1985 in order to finance a real estate development. Boca Chica accepted the loan on the condition that VSA later expand the line of credit. However, in 1987, VSA decided not to extend the additional credit.

In 1988, Boca Chica went bankrupt, and the appellant brought a lender liability claim against VSA, seeking damages in excess of $15 million. Trial was set to begin on March 13, 1989. The appellant feared that the Federal Savings & Loan Insurance Corporation ("FSLIC") would take over VSA before a judgment could be obtained. Therefore, the appellant was anxious to settle. The parties entered into settlement negotiations in early March 1989. Even as the parties worked toward an agreement, the appellant worried about whether any agreement would be enforceable against the FSLIC. 12 U.S.C.A. § 1823(e) (West Supp.1997) provided that no agreement would be enforceable against the FSLIC unless the agreement:

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

Appling distrusted VSA's representations that the settlement agreement complied with the requirements of Section 1823(e). Therefore, Appling agreed to sign the settlement agreement if VSA's attorneys would affirm that it met the requirements of Section 1823(e). The parties signed a settlement agreement dated March 8, 1989 and March 9, 1989. The agreement provided, in part:

[B]oth Victoria and its counsel represent to Plaintiffs that (a) this agreement is in writing; (b) it is being executed by both Victoria and Plaintiffs contemporaneously with the acquisition of these assets by Victoria; (c) that the Agreement has been approved by the Board of Directors of Victoria Savings Association and that such approval is reflected in the minutes of said board (a copy of which shall be attached to this Agreement); and (d) that a copy of this Agreement shall be from the time of its execution continuously maintained as an official record of Victoria; all in accordance with 12 U.S.C. § 1823(e).

On March 9, 1989, the VSA Board of Directors ("VSA Board") approved the settlement.

The settlement agreement was signed by Ralph A. Lopez, who was an attorney employed by the appellee. In his deposition, Lopez stated that he was VSA's attorney of record for the lawsuit and that he signed the settlement agreement within the course and scope of his employment with the appellee.

On February 16, 1989, the VSA Board adopted a resolution consenting to the Texas Savings and Loan Commissioner putting VSA under a state of "voluntary supervision." The resolution gave Jerry G. Payne, a representative of the Texas Savings and Loan Department, the power to perform

many functions, including settling lawsuits against VSA. On March 3, 1989, the VSA Board members and James L. Pledger, the Savings and Loan Commissioner, signed an agreed order placing VSA under Payne's voluntary supervisory control. The order provided in part that "no meeting of the Board shall occur without written approval of the Supervisor prior to the meeting (and the Supervisor shall be allowed to attend any such meeting), and no action taken at any Board meeting will be valid or binding on the Association unless and until such action is approved in writing by the Supervisor or the Commissioner." In his deposition, Lopez claimed that he did not know about the supervisory agreement when the settlement agreement was signed.

Payne never ratified the settlement agreement. The agreement was never entered as a final judgment. On June 29, 1989, VSA was declared insolvent, and the FSLIC was appointed receiver. Subsequently, the appellant's case against VSA was removed to federal court. The Resolution Trust Corporation ("RTC") was substituted for the FSLIC in September 1989. The RTC contended that the settlement agreement was not binding. The federal court agreed. It concluded that the VSA Board gave up its authority to enter into a settlement when it signed the agreed supervisory order on March 3, 1989. Therefore, the VSA Board did not have the authority to settle with the appellant on March 9, 1989. As a result, the settlement agreement was not binding on the RTC, because it was not "approved by the board of directors of the depository institution," as required by 12 U.S.C.A. § 1823(e)(1)(C).

On March 8, 1991, the appellant sued the appellee, stating negligence and fraud actions stemming from the appellee's representation that the VSA Board approved the settlement agreement. On August 18, 1994, the appellee filed a motion for summary judgment. The motion presented one ground for summary judgment against the negligence claim: that the appellee owed no duty to the appellant. On October 18, 1994, the trial court granted summary judgment on the negligence claim, but denied summary judgment on the fraud claim. On September 17, 1996,

the trial court entered final judgment, ordering that the appellant take nothing on its negligence claim and dismissing the fraud claim without prejudice. The appellant appeals the denial of its negligence claim.

Summary judgment is appropriate if the summary judgment evidence

> on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show[s] that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

TEX.R. CIV. P. 166a(c). When deciding whether a disputed issue of material fact precludes summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant movant can prevail on summary judgment by establishing conclusively against the plaintiff one element of the plaintiff's cause of action. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996).

■ The appellant alleges that the appellee negligently misrepresented that the settlement agreement met the requirements of Section 1823(e). The appellee argues that the appellant is raising a professional malpractice claim. The appellee notes that an attorney is not liable to third parties for professional malpractice because an attorney does not owe a duty of professional care to nonprivies. The Texas Supreme Court recently noted:

> At common law, an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of the client. Without this "privity barrier," the rationale goes, clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability.

*Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (citations omitted). *Barcelo* held that "an attorney retained by a testator or settlor

to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust." *Id.* at 579.

The appellee's argument is fallacious. The appellant has not brought a professional malpractice claim. Instead, the appellant has brought a negligent misrepresentation claim. Texas *recognizes a cause of action for negligent misrepresentation, as defined by* RESTATEMENT (SECOND) OF TORTS § 552 (1977). *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). RESTATEMENT (SECOND) OF TORTS § 552(1),(2) (1977) provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

■ A negligent misrepresentation claim is not equivalent to a professional malpractice claim. "Under [a negligent misrepresentation] theory, liability is not based on the breach of duty a professional owes his clients or others in privity, but on an independent duty to plaintiff based on [the defendant's] manifest awareness of plaintiff's reliance [on the misrepresentation] and intention that the plaintiff so rely." *Horizon Financial, F.A. v. Hansen,* 791 F.Supp. 1561, 1574 (N.D.Ga.1992). "Privity is not a necessary element of a claim for negligent misrepresentation." *Mehaffy, Rider, Windholz & Wilson*

*v. Central Bank Denver, N.A.,* 892 P.2d 230, 236 (Colo.1995). Therefore, an attorney can be subject to a negligent misrepresentation claim in a case in which he is not subject to a professional malpractice claim. *Id.* at 235–40; *Kirkland Constr. Co. v. James,* 39 Mass. App.Ct. 559, 658 N.E.2d 699, 700–02 (1995).

■ The basis for a negligent misrepresentation claim is the relationship of trust created when an attorney makes representations to a third party in order to induce the third party's reliance. For example, in *Kirkland,* Kirkland agreed to renovate office space for Write Now after being assured by Choate, Hall, & Stewart, Write Now's law firm, that Write Now had the ability to pay for the renovation. After Write Now failed to pay for the renovation, Kirkland brought suit against Choate, Hall, & Stewart, alleging negligent misrepresentation. In reversing the trial court's dismissal of Kirkland's case for failure to state a claim, the appeals court stated:

> First, Kirkland does not allege that it sought legal advice from Choate, Hall; it sought assuring information from the lawyers about their client. Second, the complaint may be read to allege that Choate, Hall made factual representations about arrangements its client "had made to ensure payment to Kirkland." Choate, Hall's objective was to induce Kirkland to enter into a contract for the benefit of its client, itself, and, incidentally, Kirkland. That combination, if Kirkland can prove it, may well be significant. Third, Kirkland alleges that Choate, Hall knew and intended that Kirkland would rely on the representations in its letters, and Kirkland reasonably so relied. And fourth, the representations were allegedly false, careless, and harmful. Those allegations, if they are proven, are the stuff of liability.

*Kirkland,* 658 N.E.2d at 701 (citations omitted). When an attorney undertakes such a course, he assumes a relationship with the third party that is similar to privity:

> When a lawyer at the direction of her client prepares an opinion letter which is addressed to the third party or which expressly invites the third party's reliance

she engages in a form of limited representation. Although the attorney is paid by and represents her client, in the opinion letter she expressly states (with her client's consent) that she is rendering a legal service to the third party. Commentators have agreed that the attorney owes a duty to the third party if the opinion letter is either addressed to the third party or expressly authorizes his reliance.

*Crossland Sav. FSB v. Rockwood Ins. Co.,* 700 F.Supp. 1274, 1282 (S.D.N.Y.1988) (citation omitted). For example, in New York, courts impose liability for negligent misrepresentation when the attorney and third party have "a relationship so close as to approach that of privity." *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318, 320 (1992). Such a relationship exists if three criteria are present:

> (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.

*Id.* at 321–22. These criteria, which are similar to the requirements of RESTATEMENT (SECOND) OF TORTS § 552, can create a duty when an attorney provides an opinion letter to a third party at the request of his client. *Prudential,* 590 N.Y.S.2d 831, 605 N.E.2d at 320; *see Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354, 1359 (1995).

By recognizing a cause of action for negligent misrepresentation, we do not undermine the requirement of strict privity that is usually required for a third party to assert a claim against an attorney. For example, the *Barcelo* plaintiffs would have no negligent misrepresentation cause of action because the defendant never made a representation to them. In fact, only two Texas cases present fact situations implicating Section 552.

In *First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin and Stewart,* 648 S.W.2d 410, 412–13 (Tex.App.-Dallas 1983, writ ref'd n.r.e.), First Municipal Leasing Corporation ("First Municipal") purchased The System Works' right to receive payments under a contract with Fort Bend County ("the County"). First Municipal then arranged to sell this right to Richardson Heights Bank and Trust ("Richardson Heights"). Before purchasing the right to receive payments, Richardson Heights requested a letter from an attorney concerning whether The System Works' contract was a binding legal obligation of the County. First Municipal requested that The System Works provide such an opinion. The System Works employed Blankenship, Potts, Aikman, Hagin and Stewart ("Blankenship, Potts") to generate an opinion. Blankenship, Potts knew that the opinion was to be given to a third party; however, the opinion letter was addressed solely to The System Works. The letter concluded that the contract was binding on the County. After First Municipal and Richardson Heights received the letter, they consummated the transaction. Later, it was determined that the County was not obligated to The System Works, so First Municipal purchased the contract from Richardson Heights and sued Blankenship, Potts for damages resulting from the law firm's negligent preparation of the opinion letter. The trial court granted summary judgment for Blankenship, Potts, and the court of appeals affirmed, partly because Blankenship, Potts owed no duty to a nonclient, such as First Municipal.

In *Bell v. Manning,* 613 S.W.2d 335, 335–38 (Tex.Civ.App.-Tyler 1981, writ ref'd n.r.e.), J.W. Guill, a building contractor, agreed to build a house for the Bells. Guill and the Bells visited the office of attorney Manning, who had been employed by Guill to prepare a mechanic's and materialman's lien. Guill and the Bells were met by Manning's secretary, Sexton, whom the Bells mistook for Manning. Upon Sexton's urging, the Bells signed a deed of trust to a bank, even though they were paying cash for the house. After the bank foreclosed on the house, the Bells sued Manning, claiming that Sexton negligently misrepresented to them that they needed to execute the deed of trust in order to make the transaction legal. The trial court granted summary judgment in favor of Manning, and the court of appeals affirmed. The court

**410**

pointed to cases holding that "an attorney is not liable to a party, other than his client, for damages resulting in the performance of his service requiring professional skill and ability." *Id.* at 338. The court concluded that Sexton's remarks were not negligent misrepresentations, but that even if they were, there was no liability because Manning owed no duty to the Bells.

*First Municipal* and *Bell* failed to recognize that strict privity may not be required in a negligent misrepresentation cause of action. The concerns behind the strict privity requirement are not applicable here. *Crossland,* 700 F.Supp. at 1283, discussed some of these concerns:

> As to the loss of confidentiality, where the opinion letter is addressed to the third party at the direction of the client, any resulting loss of confidentiality is as a result of the client's own decision and not that of the attorney. The sacrifice of confidentiality is the consequence of the client's choice. As to zealous representation, the rendering of an opinion to a third party at the client's direction for the advancement of the client's interests does not detract in any way from the attorney's loyalty to her client; she is serving her client's interest by rendering the opinion. That the risk of liability may induce caution is not inappropriate. The rendering of a legal opinion is a service of the attorney's duties as to which judgment is expected to prevail over zeal. Finally, as to the ethical prohibition on the attorney's representation of an adverse party, that prohibition is not present where the client recognizes the potential conflict and nonetheless directs the attorney to furnish the opinion to the adverse party.

*See also Vereins–Und Westbank, AG v. Carter,* 691 F.Supp. 704, 715–16 (S.D.N.Y.1988). In the instant case, a liability finding would not compromise the appellee's loyalty to its client because the disputed representation was made in order to effectuate the client's desire to obtain a settlement with the appellant. Therefore, we hold that the appellee is not entitled to summary judgment on the ground that it owed no duty to the appellant. Because we conclude that the appellee may

have a duty to the appellant under Restatement (Second) of Torts § 552, we need not address the appellant's contention that the appellee voluntarily assumed a duty.

The judgment of the trial court is reversed, and this cause of action is remanded.