**McCAMISH, MARTIN, BROWN & LOEFFLER, Petitioner,**

v.

**F.E. APPLING INTERESTS, individually and on behalf of Boca Chica Development Co., Respondent.**

No. 97–0970.

Supreme Court of Texas.

Argued Oct. 22, 1998.

Decided April 29, 1999.

Rehearing Overruled June 24, 1999.

Harold L. Socks, John N. McCamish, San Antonio, Charles W. Schwartz, Houston, for Petitioner.

William B. Emmons, David M. Gunn, Houston, Scott Rothenburg, Bellaire, Roger Townsend, Houston, for Respondent.

Justice HANKINSON delivered the opinion of the Court.

In this case, we determine whether McCamish, Martin, Brown & Loeffler, a law firm representing Victoria Savings Association (VSA), may be liable to F.E. Appling Interests, a general partnership, and Boca Chica Development Company, a joint venture partnership managed by Appling, both nonclients, for the tort of negligent misrepresentation, as defined by the RESTATEMENT (SECOND) OF TORTS § 552 (1977). At trial, McCamish, Martin moved for summary judgment on Appling's negligent misrepresentation claim on the sole ground that, absent privity, McCamish, Martin owed no duty to Appling. The trial court rendered a take-nothing summary judgment in favor of McCamish, Martin based on the lack of privity between the parties. The court of appeals reversed and remanded for a trial on the merits, 953 S.W.2d 405, holding that a negligent misrepresentation claim is not the equivalent of a legal malpractice claim and is not barred by the privity rule. We affirm the judgment of the court of appeals.

Appling, a general partnership comprising four family trusts, was the managing partner of Boca Chica, a joint venture formed to develop recreational property. According to Appling's affidavit, Boca Chica obtained a loan and line of credit from VSA in 1985 to finance a real estate project. Boca Chica accepted the loan based on VSA's oral representation that VSA would later expand the line of credit, provided that Boca Chica's lot sales justified completing the development. However, in 1987, VSA decided not to extend the additional credit, despite the continued viability of the project. In 1988, Boca Chica went bankrupt and brought a lender liability

claim against VSA for $15 million in damages.

With trial set for March 13, 1989, Boca Chica feared that the Federal Savings & Loan Insurance Corporation would declare VSA insolvent and take it over before a judgment could be obtained. If VSA were placed in receivership, Boca Chica's claim, based on the breach of an oral promise, would be unenforceable against VSA. Boca Chica was, therefore, anxious to settle. Boca Chica and VSA entered into settlement negotiations in early March 1989. They reached an agreement, which called for Boca Chica to deed the development to VSA in exchange for forgiveness of the outstanding debt that Boca Chica owed to VSA. Once the parties agreed on these terms, Appling wanted to ensure that the settlement agreement would be enforceable against the FSLIC.

Under 12 U.S.C. § 1823(e)(1), no agreement is enforceable against the FSLIC unless the agreement:

(A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

Appling distrusted VSA's representations that the agreement met the requirements of section 1823(e). Consequently, Appling agreed to sign the agreement only if VSA's lawyers would affirm that the agreement did, in fact, comply with the statute. The parties and their attorneys signed a settlement agreement, dated March 8 and 9, 1989, in which the requested representations were made:

[B]oth Victoria and its counsel represent to Plaintiffs that (a) this agreement is in writing; (b) it is being executed by both Victoria and Plaintiffs contemporaneously with the acquisition of these assets by Victoria; (c) that the Agreement has been approved by the Board of Directors of Victoria Savings Association and that such approval is reflected in the minutes of said board (a copy of which shall be attached to this Agreement); and (d) that a copy of this Agreement shall be from the time of its execution continuously maintained as an official record of Victoria; all in accordance with 12 USC § 1823(e).

The settlement agreement also included a "full, mutual general release" by both parties as to "all claims and causes of action, known and unknown, asserted or which might have been asserted, in this litigation." The agreement did not contain any disclaimer of reliance on representations made by the other party.

McCamish, Martin represented VSA in the underlying lawsuit. Ralph Lopez, an attorney with McCamish, Martin, signed the settlement agreement. In his deposition, Lopez stated that he was VSA's attorney of record for the lawsuit and that he signed the settlement agreement in the course and scope of his employment with VSA.

On February 16, 1989, the VSA Board of Directors, including Tom Martin, a McCamish, Martin shareholder who principally represented VSA, adopted a resolution consenting to the Texas Savings and Loan Commissioner putting VSA under "voluntary supervision." This resolution gave Jerry Payne, representative of the Texas Savings and Loan Department, the power to settle lawsuits against VSA. On March 3, 1989, the VSA Board, including Martin, and James Pledger, the Savings and Loan Commissioner, signed an agreed order placing VSA under the Commissioner's voluntary supervisory control. The order provided, in part, that "no action taken at any Board meeting will be valid or binding on [VSA] unless and until such

action is approved in writing by the Supervisor or the Commissioner."

On March 12, 1989, the VSA Board approved the settlement agreement reached by Appling and Boca Chica. Martin did not sign the approval resolution. In his deposition, Lopez claimed that Martin did not inform him about the supervisory order and that Lopez did not know the VSA Board lacked the authority to approve the settlement agreement when he signed the agreement on behalf of VSA.

Payne never ratified the settlement agreement, and the agreement was never entered as a final judgment. On June 29, 1989, VSA was declared insolvent, and the FSLIC was appointed receiver. The FSLIC removed Appling's case against VSA to federal court. The federal court concluded that the VSA Board gave up its authority to enter into a settlement when it signed the agreed supervisory order on March 3, 1989. Thus, the settlement agreement was not binding on the FSLIC because it was not approved by the VSA Board as required by section 1823(e). *See F.E. Appling Interests v. McCamish, Martin, Brown & Loeffler,* C.A. NO. V–89–0027 (S.D.Tex. May 11, 1992) (mem.).

Appling then filed this suit, individually and on behalf of Boca Chica, against McCamish, Martin, alleging that McCamish, Martin negligently misrepresented that the VSA Board had approved the settlement agreement. McCamish, Martin moved for summary judgment on the negligent misrepresentation claim on the sole ground that the firm owed no duty to Appling. The trial court granted the motion. The trial court later rendered final judgment, ordering that Appling take nothing. Appling appealed. The court of appeals reversed and remanded on the theory that, even absent privity, an attorney may owe a duty to a third party to avoid negligent misrepresentation. 953 S.W.2d at 410.

On petition for review, McCamish, Martin argues that Appling does not have a cause of action against McCamish, Martin for the tort of negligent misrepresentation, as defined by the RESTATEMENT (SECOND) OF TORTS § 552, because, under Texas law, an attorney owes no duty of care to a third party absent privity. In particular, McCamish, Martin contends that Texas law does not permit a nonclient to sue a lawyer for negligence arising out of the lawyer's representation of a client because the lawyer and nonclient are not in privity. According to McCamish, Martin, the Texas privity requirement reflects the importance of the attorney-client relationship and takes into account the nature and demands of the adversarial system.

Moreover, McCamish, Martin argues that under Texas law, the privity rule applies to all negligence-based causes of action, whether the nonclient's claims are characterized as legal malpractice or negligent misrepresentation. Because McCamish, Martin represented Appling's adversary in a litigation matter and was never in privity with Appling, the law firm claims that it cannot be held liable to Appling for negligent misrepresentation. Appling responds that the court of appeals correctly held that an attorney may be liable to a nonclient under the RESTATEMENT (SECOND) OF TORTS § 552. Specifically, Appling claims that both the RESTATEMENT and Texas law envision the application of section 552 to attorneys. Appling also argues that there is no strict privity requirement in a cause of action against an attorney under section 552. Thus, Appling urges this Court to recognize a distinction between cases of legal malpractice, which are subject to the privity rule, and cases of negligent misrepresentation, which are not.

Furthermore, according to Appling, applying section 552 to attorneys does not offend the policy justifications for the privity rule, such as exposure to conflicting duties and to unlimited liability. Appling points out that the rules of professional conduct require an attorney to make certain no conflict of interest exists and to

obtain the client's consent before undertaking an evaluation for a nonclient. Additionally, Appling emphasizes that section 552 limits liability to a narrow class of persons. Finally, Appling asserts that allowing a negligent misrepresentation claim against an attorney will not only improve the legal profession's integrity and reputation, but will also promote desirable economic activity by protecting a commercial actor who justifiably relies on an evaluation provided by the attorney of another commercial actor.

█ Thus, the parties present this Court with one precise question: Whether the absence of an attorney-client relationship precludes a third party from suing an attorney for negligent misrepresentation under the RESTATEMENT (SECOND) OF TORTS § 552. We do not decide or address in any way the liability of McCamish, Martin in this case. Instead, we determine only whether Appling, a nonclient, may bring a negligent misrepresentation cause of action, as defined by section 552, against McCamish, Martin.

This Court has already adopted the tort of negligent misrepresentation as described by the RESTATEMENT (SECOND) OF TORTS § 552. *See Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991). In *Sloane,* the Court endorsed section 552 to define the scope of a lender's duty to avoid negligent misrepresentations to prospective borrowers. Section 552(1) provides:

> One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Courts applying Texas law have recognized a section 552 cause of action against other professionals as well. *See, e.g., Steiner v. Southmark Corp.,* 734 F.Supp. 269, 279–80 (N.D.Tex.1990) (auditor); *Smith v. Sneed,* 938 S.W.2d 181, 185 (Tex. App.—Austin 1997, no writ) (physician); *Hagans v. Woodruff,* 830 S.W.2d 732, 736 (Tex.App.—Houston 1992, no writ) (real-estate broker); *Lutheran Bhd. v. Kidder Peabody & Co.,* 829 S.W.2d 300, 309 (Tex. App.—Texarkana 1992, writ granted w.r.m.) (securities placement agent); *Blue Bell v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408, 411–12 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (accountant); *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (surveyor); *Great Am. Mortgage Investors v. Louisville Title Ins. Co.,* 597 S.W.2d 425, 429–30 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (title insurer); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873, 880 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.) (accountant).

We perceive no reason why section 552 should not apply to attorneys. First, nothing in the language of section 552 or in the reasoning of *Sloane* warrants such an exception. More importantly, allowing a nonclient to bring a negligent misrepresentation cause of action against an attorney does not undermine the general rule that persons who are not in privity with an attorney cannot sue the attorney for legal malpractice. Nor does applying section 552 to attorneys implicate the policy concerns behind our strict adherence to the privity rule in legal malpractice cases. Finally, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73 (Tentative Draft No. 8, 1997),[1] which sets forth certain circumstances in which an attorney may owe a duty of care to a nonclient, validates the application of section 552 to an attorney when the attorney invites a nonclient's reliance.

---

1. Tentative Draft No. 8 has been approved by the American Law Institute, but is still subject to final revisions before publication.

■ At common law, the rule of privity limits attorney liability to third parties. *See generally* 1 Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice,* § 7.1 (4th ed.1996); David J. Meiselman, *Attorney Malpractice: Law and Procedure,* § 6.2 (1980). The general rule is that persons who are not in privity with the attorney cannot sue the attorney for legal malpractice. *See* Mallen and Smith, § 7.1; Meiselman, § 6.2; *see also* 2 Barry A. Lindahl, *Modern Tort Law Liability & Litigation,* § 26.14 (1989). In practical terms, this privity requirement means that an attorney is not liable for malpractice to anyone other than her client. *See Savings Bank v. Ward,* 100 U.S. 195, 200, 25 L.Ed. 621 (1879); *Barcelo v. Elliott,* 923 S.W.2d 575, 577 (Tex.1996) (citing *Savings Bank* ).

■ As the court of appeals noted, a negligent misrepresentation claim is not equivalent to a legal malpractice claim. 953 S.W.2d at 408. Under the tort of negligent misrepresentation, liability is not based on the breach of duty a professional owes his or her clients or others in privity, but on an independent duty to the nonclient based on the professional's manifest awareness of the nonclient's reliance on the misrepresentation and the professional's intention that the nonclient so rely. *See Horizon Fin., F.A. v. Hansen,* 791 F.Supp. 1561, 1574 (N.D.Ga.1992) (citing *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.1985), and *Robert & Co. Assocs. v. Rhodes–Haverty Partnership,* 250 Ga. 680, 300 S.E.2d 503 (1983)). Therefore, an attorney can be subject to a negligent misrepresentation claim in a case in which she is not subject to a legal malpractice claim. *See Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d 230, 236 (Colo.1995); *Kirkland Constr. Co. v.*

*James,* 39 Mass.App. 559, 658 N.E.2d 699, 700–02 (1995).

■ The theory of negligent misrepresentation permits plaintiffs who are not parties to a contract for professional services to recover from the contracting professionals. *See FSLIC v. Texas Real Estate Counselors, Inc.,* 955 F.2d 261, 268 n. 13 (5th Cir.1992); *see also Horizon,* 791 F.Supp. at 1574; *Mehaffy,* 892 P.2d at 236; *Kirkland,* 658 N.E.2d at 700–02. Likewise, section 552 imposes a duty to avoid negligent misrepresentation, irrespective of privity. *See Cook,* 700 S.W.2d at 234.

Section 552 is the most widely adopted standard of negligent misrepresentation in attorney liability cases and economic negligence cases generally. *See* Jay M. Feinman, *Attorney Liability to Nonclients,* 31 Tort & Ins. L.J. 735, 742 (1996). As a number of other jurisdictions have recognized, section 552 does not require privity, even when applied to attorneys. *See, e.g., Menuskin v. Williams,* 145 F.3d 755, 762–63 (6th Cir.1998) (applying Tennessee law); *One Nat'l Bank v. Antonellis,* 80 F.3d 606, 612 (1st Cir.1996) (interpreting Massachusetts law); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1124 n. 20 (5th Cir.1988) (discussing Louisiana law); *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1564–65 (7th Cir. 1987) (applying Illinois law); *Eisenberg,* 766 F.2d at 779–80 (applying Pennsylvania law); Mehaffy, 892 P.2d at 236; *Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354, 1360 (1995); *Hines v. Data Line Sys., Inc.,* 114 Wash.2d 127, 787 P.2d 8, 21 (1990); *Garcia v. Rodey, Dickason, Sloan, Akin & Robb,* 106 N.M. 757, 750 P.2d 118, 122–23 (1988); *Stinson v. Brand,* 738 S.W.2d 186, 190 (Tenn.1987).[2]

---

**2.** In addition, federal district courts and intermediate state appellate courts have indicated that an attorney can be liable for negligent misrepresentation, as defined by section 552. *See, e.g., In re ML–Lee Acquisition Fund II, L.P.,* 848 F.Supp. 527, 555 (D.Del.1994); *Kline v. First W. Gov't Sec.,* 794 F.Supp. 542, 555 (E.D.Pa.1992); *Buford White Lumber Co. v. Octagon Properties, Ltd.,* 740 F.Supp. 1553,

1562 (W.D.Okla.1989); *Bush v. Rewald,* 619 F.Supp. 585, 596 (D.Haw.1985); *Mark Twain Kansas City Bank v. Jackson, Brouillette, Pohl & Kirley,* 912 S.W.2d 536, 539–40 (Mo.Ct. App.1995); *McFarlin v. Watts,* 895 S.W.2d 687, 690 (Tenn.Ct.App.1994); *Holland v. Lawless,* 95 N.M. 490, 623 P.2d 1004, 1010–11 (1981).

Several jurisdictions have held that an attorney can be liable to a nonclient for negligent misrepresentation, as defined in section 552, based on the issuance of opinion letters. *See, e.g., Greycas, Inc.,* 826 F.2d at 1564–65; *Eisenberg,* 766 F.2d at 780; *Kline v. First Western Gov't Sec.,* 794 F.Supp. 542, 555 (E.D.Pa.1992); *Horizon,* 791 F.Supp. at 1574; *Mehaffy,* 892 P.2d at 237; *Petrillo,* 655 A.2d at 1360–61; *Kirkland,* 658 N.E.2d at 701; *Mark Twain Kansas City Bank v. Jackson, Brouillette, Pohl & Kirley,* 912 S.W.2d 536, 539–40 (Mo.Ct.App.1995). Other jurisdictions have indicated a willingness to subject lawyers to a section 552 claim by a nonclient in connection with the preparation of different types of evaluations, given the proper circumstances. *See, e.g., Menuskin,* 145 F.3d at 762–63 (warranty deeds); *One Nat'l Bank,* 80 F.3d at 612 (title certificate); *Abell,* 858 F.2d at 1132–33 (offering statement); *Buford,* 740 F.Supp. at 1562 (offering memorandum); *Hines,* 787 P.2d at 21 (placement memorandum); *Collins,* 750 S.W.2d at 738 (warranty deeds); *Stinson,* 738 S.W.2d at 190 (deed of trust); *Haberman,* 744 P.2d at 1067 (annual reports). Thus, section 552 has been cited favorably in a variety of lawyer liability contexts.

Moreover, applying section 552 to attorneys does not offend the policy justifications for the strict privity rule in legal malpractice cases. In *Barcelo v. Elliott,* 923 S.W.2d 575 (Tex.1996), this Court reaffirmed that an attorney does not owe a duty of care that could give rise to malpractice liability to will beneficiaries because the attorney does not represent the beneficiaries. The Court reasoned that, without a bright-line privity rule, clients would "lose control over the attorney-client relationship" and lawyers would be "subject to almost unlimited liability." *Id.* at 577. While these policy reasons for the privity rule are legitimate, they do not preclude a section 552 cause of action against an attorney by a nonclient.

First, the application of section 552 to attorneys does not cause a client to "lose control over the attorney-client relationship." McCamish, Martin argues that imposing a section 552 duty on an attorney to a nonclient damages an attorney's ability to zealously represent a client. More specifically, McCamish Martin cautions that this potential liability to third parties creates a conflict of duties and threatens the attorney-client privilege. In the negligent misrepresentation context, neither contention has merit.

A typical negligent misrepresentation case involves one party to a transaction receiving and relying on an evaluation, such as an opinion letter, prepared by another party's attorney. Under the Texas Disciplinary Rules of Professional Conduct, an attorney cannot give an evaluation to a third party unless she reasonably believes that making the evaluation is compatible with other aspects of the attorney-client relationship and the client consents after consultation. TEX. DISCIPLINARY R. PROF'L CONDUCT 2.02. Once the lawyer is satisfied that no conflict of interest exists (between the client and the lawyer or the client and a third party), she should "advise the client of the implications of the evaluation, particularly the lawyer's responsibilities to third persons and the duty to disseminate the findings." TEX. DISCIPLINARY R. PROF'L CONDUCT 2.02 cmt. 5. Thus, in the negligent misrepresentation context, rule 2.02 safeguards against a lawyer's exposure to conflicting duties and ensures that the client makes the ultimate decision of whether to provide an evaluation. Moreover, under rule 2.02, a lawyer should not allow a client to make this decision without advising the client about the potential impact such an evaluation may have on the scope of the attorney-client privilege.

Nor does section 552 threaten lawyers with "almost unlimited liability." In fact, section 552 adequately addresses this threat by narrowing the class of potential claimants and requiring that any

claimant justifiably rely on the alleged negligent misrepresentation. Under section 552(2), liability is limited to loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance [one] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [one] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

This formulation limits liability to situations in which the attorney who provides the information is aware of the nonclient and intends that the nonclient rely on the information. In other words, a section 552 cause of action is available only when information is transferred by an attorney to a known party for a known purpose. A lawyer may also avoid or minimize the risk of liability to a nonclient by setting forth (1) limitations as to whom the representation is directed and who should rely on it, or (2) disclaimers as to the scope and accuracy of the factual investigation or assumptions forming the basis of the representation or the representation itself. *See, e.g., Molecular Tech. Corp. v. Valentine,* 925 F.2d 910, 916 (6th Cir.1991); *Horizon,* 791 .F.Supp. at 1574; *Petrillo,* 655 A.2d at 1361–62; *Mark Twain,* 912 S.W.2d at 540; *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 2.02 cmt. 6.

■ Moreover, section 552 guards against exposure to unlimited liability by requiring that a claimant justifiably rely on a lawyer's representation of material fact. Thus, not every statement made by an attorney to a nonclient is actionable under section 552. For example, an attorney's statements communicating her client's negotiating position are not statements of material fact. *See, e.g.,* TEX. DISCIPLINARY R. PROF'L CONDUCT 4.01 cmt. 1 (differentiating between representations of material fact and negotiating positions,

specifically in the context of settlement claims).

■ In determining whether section 552's justifiable reliance element is met, one must consider the nature of the relationship between the attorney, client, and nonclient. Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context. *See, e.g., Mehaffy,* 892 P.2d at 235, 237 (business transaction); *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 378–79 (Minn.1989) (arbitration proceeding); *Garcia,* 750 P.2d at 122–23 (N.M.1988) (litigation); *Beeck v. Kapalis,* 302 N.W.2d 90, 96–97 (Iowa 1981) (litigation); *see also* Mallen and Smith, § 7.10 (stating the same and noting that "[t]he adversary concept is not limited to litigation. The same policy considerations apply to business and commercial transactions."). This adversary concept reflects the notion that an attorney, hired by a client for the benefit and protection of the client's interests, must pursue those interests with undivided loyalty (within the confines of the Texas Disciplinary Rules of Professional Conduct), without the imposition of a conflicting duty to a nonclient whose interests are adverse to the client. Because not every situation is clearly defined as "adversarial" or "nonadversarial," the characterization of the inter-party relationship should be guided, at least in part, by "the extent to which the interests of the client and the third party are consistent with each other." *See* Feinman, 31 Tort & Ins. L.J. at 750.

In addition to these policy considerations, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73, entitled "Duty of Care to Certain Nonclients," also supports allowing a third party to bring a section 552 claim against a lawyer, irrespective of privity. Subsection 73(2) covers situations in which an attorney invites reliance by a nonclient. Under this subsection, an attorney owes a duty of care to a nonclient:

when and to the extent that: (a) a lawyer ... invites the non-client to rely on the lawyer's opinion or provision of other legal services, and the non-client so relies, and (b) the non-client is not, under applicable tort law, too remote from the lawyer to be entitled to protection. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73(2) (Tentative Draft No. 8, 1997). In other words, a nonclient cannot rely on an attorney's statement, such as an opinion letter, unless the attorney invites that reliance.

Subsection 73(2) accommodates the common law of the appropriate jurisdiction when determining whether a lawyer may be liable to a nonclient for inviting the nonclient's reliance. Comment (e) identifies section 552 as one of several jurisdictional approaches to limiting a lawyer's duty in such a situation. Additionally, comment (e) incorporates the requirements of section 552 into the subsection 73(2) duty analysis. Citing section 552, comment·(e) explains that "[t]he [subsection 73(2) ] cause of action ordinarily is in substance identical to a claim for negligent misrepresentation and is subject to rules such as those concerning proof of materiality and reliance." Thus, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73 validates the application of section 552 to lawyers, specifically in circumstances in which there is no attorney-client relationship.

Neither section 552 nor *Sloane* limits the class of potential defendants under section 552 to nonlawyers. In addition, the theory of negligent misrepresentation and section 552 itself do not require privity or implicate the policy concerns behind the privity rule. Finally, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73(2), which specifically addresses situations in which an attorney invites reliance by a nonclient, not only recognizes the tort of negligent misrepresentation, as defined by section 552, but also incorporates the limitations of section 552 into its duty analysis. We, therefore, conclude that there is

no reason to exempt lawyers from the operation of section 552 or to impose a privity requirement on a negligent misrepresentation cause of action under section 552. In so holding, we disapprove of the language in the following Texas cases refusing to permit a nonclient to bring a section 552 claim against an attorney based on a lack of privity: *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), and *Bell v. Manning,* 613 S.W.2d 335, 338 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.).

The trial court granted McCamish, Martin's motion for summary judgment on Appling's negligent misrepresentation claim on the sole ground that, absent privity, McCamish, Martin owed no duty to Appling. Because we hold that McCamish, Martin may owe a duty to Appling, irrespective of privity, we affirm the judgment of the court of appeals, remanding this cause to the trial court.

Justice GONZALES did not participate in the decision.