IN THE SUPREME COURT OF TEXAS
















IN THE SUPREME COURT OF TEXAS

 

════════════

No. 06-0178

════════════

 

Forest Oil Corporation and
Daniel B. Worden, Petitioners,

 

v.

 

James Argyle McAllen,
El Rucio Land and Cattle Company, Inc., San Juanito Land Partnership, and McAllen Trust Partnership, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District of
Texas

════════════════════════════════════════════════════

 

 

Argued October 16,
2007

 

 

           
Chief Justice Jefferson, joined by Justice Medina,
dissenting.

 

 

                                                                                                           


           
According to the Court, the considerations most relevant to our analysis in Schlumberger
Technology Corp. v. Swanson, 959 S.W.2d 171 (Tex. 1997), were:

(1) the terms of the contract were
negotiated, rather than boilerplate, and during negotiations the parties specifically
discussed the issue which has become the topic of the subsequent dispute; (2)
the complaining party was represented by counsel; (3) the parties dealt with
each other in an arm’s-length transaction; (4) the parties were knowledgeable
in business matters; and (5) the release language was clear.

 

__ S.W.3d __, __. 
My disagreement with the Court centers on the first point.  Under the
Court’s analysis, a party may intentionally misrepresent facts essential to the
bargain to induce the other to sign, as long as the agreement says reliance is
waived.  This is not sound policy, and Schlumberger does not
support this result.  I would hold that McAllen’s fraudulent inducement claim
survives  the disclaimer of reliance at issue
here.  Because the Court does not, I respectfully dissent.

 

I

Schlumberger
 

 

           
In Schlumberger, we noted that we had previously held “as a matter of
policy, that a merger clause can be avoided based on fraud in the inducement
and that the parol evidence rule does not bar proof
of such fraud,” and that “[i]n doing so, we brought
the law on the subject ‘into harmony with the great weight of authority, with
the rule of the Restatement of the Law of Contracts, and with the views of
eminent textwriters.’”  Schlumberger, 959
S.W.2d at 179 (quoting Dallas Farm Mach. Co. v. Reaves, 307 S.W.2d 233,
239 (Tex.
1957)).  This remains the general rule in Texas.  See Prudential Ins.
Co. of Am. v. Jefferson Assocs., 896 S.W.2d 156, 162 (Tex.
1995); see also Weitzel v. Barnes, 691 S.W.2d
598, 600 (Tex.
1985) (admitting parol evidence to establish
misrepresentation in DTPA claim); Restatement (Second) of Contracts, § 214 cmt. c (“What appears to be a complete and binding
integrated agreement may be a forgery, a joke, a sham, or an agreement without
consideration, or it may be voidable for fraud,
duress, mistake, or the like, or it may be illegal.  Such invalidating
causes need not and commonly do not appear on the face of the writing.  They
are not affected even by a ‘merger’ clause.”) (emphasis
added).  We then noted that “[j]uxtaposed to
this authority, we have a competing concern—the ability of parties to fully and
finally resolve disputes between them.”  Schlumberger, 959 S.W.2d at 179.  The Court reads Schlumberger
as settling these competing concerns by precluding a fraudulent inducement
claim where there is a disclaimer of reliance and the factors listed above are
present.  

           
But Schlumberger is not so broad.  There, we held that, where the
four other factors listed by the Court are present, “a release that clearly
expresses the parties’ intent to waive fraudulent inducement claims, or one
that disclaims reliance on representations about specific matters in dispute,
can preclude a claim of fraudulent inducement.”   Id. at 181.  The release in Schlumberger did
not contain an express waiver of fraudulent inducement claims, but did disclaim
reliance on representations about specific matters in dispute.  Id. at 180.  The release itself noted that “‘there [wa]s considerable doubt,
disagreement, dispute and controversy with reference to the validity of the
[claim being settled],’” and the “sole purpose of the release was to end [that]
dispute.”  Id. 
The Schlumberger Court
therefore concluded “that the parties contemplated, by the inclusion of [the
disclaimer of reliance], that the Swansons would not
rely on any representations of Schlumberger about the commercial feasibility
and value of this project, which, after all, was the very dispute that the
release was supposed to resolve.”  Id.   

           
That the Schlumberger Court
limited its holding to a release “that clearly expresses the parties’ intent to
waive fraudulent inducement claims, or one that disclaims reliance on
representations about specific matters in dispute” is clear from the rest of
the opinion.  Id. at 181.  Indeed, we “emphasize[d]” in Schlumberger
“that a disclaimer of reliance or merger clause will not always bar a
fraudulent inducement claim.” Id.
We cited Prudential Insurance Co. of America v. Jefferson Associates, in
which we said “[a] buyer is not bound by an agreement to purchase something ‘as
is’ that he is induced to make because of a fraudulent representation or
concealment of information by the seller.”  Prudential,
896 S.W.2d 156, 162 (Tex.
1995).  This would be a strange authority to cite if Schlumberger
were as sweeping as the Court suggests: it is difficult to imagine a party
making fraudulent representations on a subject that has not been
discussed.  And while the Court states that “this statement merely
acknowledges that facts may exist where the disclaimer lacks ‘the requisite
clear and unequivocal expression of intent necessary to disclaim reliance’ on
the specific representations at issue,” it does so without addressing Prudential,
instead quoting an earlier passage from Schlumberger.  __ S.W.3d at __ (quoting Schlumberger, 959 S.W.2d at 179).


           
In sum, in Schlumberger we balanced parties’ need to settle disputes against
our strong aversion to fraud.  The result was a narrow exception to the
rule that integration clauses do not bar fraudulent inducement claims.  By
expanding Schlumberger, the Court’s holding will force courts to honor
contracts indisputably induced by fraud on the basis of blanket reliance
waivers, like the one at issue here.  I would not.

II 

McAllen’s
Fraudulent Inducement Claim

 

           
As discussed above, under Schlumberger, to bar a fraudulent inducement
claim, a disclaimer of reliance must either expressly waive the claim or
disclaim reliance on representations about the specific disputed matter, Schlumberger,
959 S.W.2d at 181; otherwise, the general rule that integration clauses do not
bar fraudulent inducement claims applies.  The disclaimer in this case
does neither.  The relevant portion of the disclaimer reads: 

 

Each of the
Plaintiffs and Intervenors expressly warrants and
represents and does hereby state and represent that no promise or agreement
which is not herein expressed has been made to him, her, or it in executing the
releases contained in this Agreement, and that none of them is relying upon any
statement or any representation of any agent of the parties being released
hereby. 

 

  

This disclaimer
makes no explicit reference to fraudulent inducement.  The question, then,
is whether it disclaims reliance on representations about a specific disputed
matter in the agreement.  While the disclaimers in this case and Schlumberger
may appear to be “virtually identical,” __ S.W.3d at __, the factual
differences between this case and Schlumberger are critical.  In Schlumberger,
there was essentially one dispute—specifically described in the
agreement—being settled, and therefore, “[b]ecause
courts are to assume that the parties intended every contractual provision to
have some meaning,” the Court was able to “presume” that the disclaimer of
reliance applied specifically to representations about that sole dispute. 
Schlumberger, 959 S.W.2d at 180. 
In the instant case, in contrast, the settlement agreement covered a number of
topics, chiefly royalty underpayment and mineral underdevelopment.  Thus,
unlike Schlumberger, we cannot presume that the disclaimer of reliance
referred specifically to environmental issues, and the general rule that
fraudulent inducement claims are not barred by integration clauses should
apply.

III

Forest Oil’s
Remaining Issues

 

           
Forest Oil argues that McAllen
could not have justifiably relied on Forest Oil’s representation that there
were no existing issues with the surface because that representation was
contradicted by the agreement’s express terms.  Because the surface
agreement contains no contrary statement regarding surface conditions, it is
not necessary to examine this claim in detail.

           
Forest Oil also argues that McAllen
could not justifiably rely on the representation of his litigation adversary
during settlement negotiations.  Forest Oil cites McCamish,
Martin, Brown & Loeffler v. F.E. Appling Interests,
for the proposition that “a third party’s reliance on an attorney’s
representation is not justified when the representation takes place in an
adversarial context.”  McCamish, 991 S.W.2d 787, 794 (Tex.
1999).  This statement, however, refers not to whether attorneys’
statements can provide the grounds for a fraudulent inducement claim, but to
individual attorneys’ liability for negligent misrepresentation under the
Restatement (Second) of Torts section 552.  Id. at 795 (concluding “that there is no reason to
exempt lawyers from the operation of section 552”).  Regardless,
there is evidence that McAllen
relied not only on the statements of “an unidentified lawyer for one of the
four defendants,” __ S.W.3d at __, but on representations made by the parties
themselves:

 

Q. (By Mr. Mancias) Yes, sir. Were
you told in no uncertain terms by the oil companies, including Forest
Oil Company, that there were no contaminants or pollutants on the surface of
your property?

A. (By Mr. McAllen) Yes.  And all the Forest attorneys were there.  I believe Forest Doran
himself was there.

Q. Who is Forest
Doran?

A. I believe
he's the majority stockholder of Forest Oil Company.

Q. Can you tell
the Judge whether or not Mr. Doran was present when those representations you
just testified about were made to you?

A. That, I can't
recall.

Q. All right,
sir.  But the attorneys were present?

A. The attorneys
- - his attorneys were present.

***

A. But during
the process, the owners for Forest and Conoco and everybody else who was involved in the lawsuit
assured me that there was no issues [sic]
having to do with the surface, and if I wanted to get this settlement
agreement behind us, I had to do that.  But they were very convincing. 

 

 

 (Emphasis added.)  McAllen’s reliance on these statements was
not, therefore, unjustifiable as a matter of law.

IV

Conclusion

 

           
Today the Court replaces Schlumberger’s requirement that a release must
“clearly express[] the parties’ intent to waive
fraudulent inducement claims, or . . . disclaim[] reliance on representations
about specific matters in dispute” in order to preclude a fraudulent inducement
claim, 959 S.W.2d at 181, with the requirement that the parties merely
“specifically discussed the issue which has become the topic of the subsequent
dispute” during negotiations, __ S.W.3d __.  Courts, including this one,
have long battled the specter of fraud in contracts; I fear that the Court’s
opinion may one day be a weapon in the hands of those who profit from it. 
I respectfully dissent.  

 

                                                                       
                       
___________________________________

                                                                       
           
            Wallace B.
Jefferson

                                                                       
                       
Chief Justice

 

Opinion delivered: August 29, 2008